(208 P.3d 335)
No. 99,748

STATE OF KANSAS, *Appellee,* v. SANDRA QUINONES, *Appellant.*

Opinion filed June 5, 2009.

*Michelle Davis,* of Kansas Appellate Defender Office, for appellant.

*John Sauer,* county attorney, *Douglas W. McNett,* of Larned, and *Steve Six,* attorney general, for appellee.

Before CAPLINGER, P.J., BUSER, J., and BUKATY, S.J.

CAPLINGER, J.: Sandra Quinones appeals her conviction and sentence of one count of aggravated intimidation of a witness under

K.S.A. 21-3833. She alleges the district court erred in denying her motion for judgment of acquittal based on the State's failure to prove that the witness perceived Quinones' threat, and further alleges the State's failure to prove the elements of the general attempt statute, K.S.A. 21-3301. Quinones also alleges the district court erred in failing to properly instruct the jury, in determining the severity level of the crime, and in ordering her to pay Board of Indigents' Defense Services (BIDS) attorney fees without considering her ability to pay.

We conclude that K.S.A. 21-3833 is an alternative means crime which can be committed by knowingly and maliciously (1) preventing or dissuading any witness or victim, or (2) attempting to prevent or dissuade a witness or victim, from attending or giving testimony at any civil or criminal trial, proceeding, or inquiry authorized by law, when the act is accompanied by an expressed or implied threat of force or violence against the witness, victim, or other person or the property of any witness, victim, or other person. Further, neither K.S.A. 21-3833 nor the statute it incorporates, K.S.A. 21-3832, require the State to establish that the witness or intended victim perceived the defendant's threat when the State proceeds under the alternative means of attempt.

Additionally, we hold that because an attempt to intimidate a witness is a specific and alternative means of committing aggravated intimidation of a witness as proscribed by K.S.A. 21-3833(a)(1), the State was not required to prove the elements of attempt under the general attempt statute, K.S.A. 21-3301.

We affirm Quinones' conviction and sentence based upon our conclusions that the district court did not err in denying Quinones' motion for acquittal or in instructing the jury and determining the severity level of the crime. However, the district court's imposition of BIDS fees without consideration of Quinones' ability to pay requires that we vacate the imposition of fees and remand with directions to comply with *State v. Robinson*, 281 Kan. 538, Syl. ¶ 1, 132 P.3d 934 (2006).

*Factual and procedural background*

The State charged Quinones with one count of aggravated intimidation of a witness or victim in violation of K.S.A. 21-3833(a)(1),

alleging Quinones did "knowingly and maliciously prevent or dissuade, or attempt to prevent or dissuade" Steven Olivarez from giving testimony at the trial of Quinones' son, Osvaldo Quinones, and that the act was accompanied by an expressed or implied threat of force or violence against Olivarez.

At Quinones' jury trial, the courtroom bailiff at Osvaldo's trial, Sergeant Jeff Davis, testified that he observed the witness, Steven Olivarez, look at a group of individuals seated on the west side of the courtroom gallery, appear puzzled, and then look away. Davis suspected the group might be making gestures toward Olivarez because Olivarez avoided looking at the group. Davis informed bailiff Steven Thummel of his suspicions and asked him to observe the audience on the west side of the courtroom.

Thummel testified he observed Quinones make hand gestures toward her throat in "a cutting type motion." She then slid her index finger across her throat and ran it up and down vertically above her throat. Thummel perceived Quinones' first gesture as a threat to cut someone's throat and the second gesture to emphasize the first. While Thummel perceived Quinones' gestures to be directed toward the witness, Olivarez, he testified he did know whether Olivarez saw the gestures.

Patricia Salinsky, a juror at Osvaldo's trial, testified at Quinones' trial that she saw Quinones angrily make a motion across her neck at least three times while Olivarez was testifying. Salinsky interpreted the gesture as a threat, and she saw Olivarez react to the gestures, appearing scared and nervous. Salinsky informed the court bailiffs of her observations.

Davis also testified that after the trial court was informed of the these observations, the court conducted a short hearing outside the jury's presence. Following the hearing, Quinones and another individual were removed from the courtroom and arrested.

Olivarez testified that when he testified at Osvaldo's trial, he did not see Quinones make any gestures toward him. Olivarez claimed that although he was aware that Quinones was in the gallery with other relatives of Osvaldo, he avoided looking in their direction as he knew they would be angry at him for testifying.

After the State rested, Quinones moved for judgment of acquittal, arguing the State had failed to establish that the alleged threat was communicated to Olivarez. The State asserted it was not required to prove that the intended victim perceived the threat under K.S.A. 21-3833, as it was proceeding on the theory that Quinones attempted to prevent or dissuade Olivarez from testifying. The district court agreed and denied the motion for judgment of acquittal.

Quinones testified she did not attempt to intimidate or threaten Olivarez. Rather, she explained that when she is nervous or under stress, as she was during her son's trial, she develops a skin condition. Thus, she suggested the bailiff may have observed her scratching her neck due to this condition. Quinones claimed the skin condition persisted until she was released from jail 3 days later, when she had her bail bondsperson take photographs of her neck, and she also sought medical attention.

Rebecca Escalante, Quinones' bail bondsperson, testified she observed a red rash on Quinones' neck when she bonded her out of jail. Quinones told Escalante that she had rubbed at her neck in the courtroom but tried not to scratch it.

Quinones' brother, Salvador Quinones, testified he was seated with Quinones during Osvaldo's trial. He observed Quinones scratching but believed it was due to an allergic reaction. Salvador did not believe Quinones' gestures threatened any witness. Salvador conceded he saw Quinones only peripherally as he was focused on the witness, and he agreed he may not have been able to see all of Quinones' actions.

In rebuttal, Davis testified he was familiar with the booking procedures used at the Ford County Detention Center, and he was aware that an individual is photographed when arrested. Over defense counsel's objection, the court admitted Quinones' booking photograph, which showed no visible rash or markings on Quinones' neck. Davis also testified he did not see any marks or a rash on Quinones' neck at the time of her arrest, nor did she did complain of a rash.

After the jury found Quinones guilty, the district court imposed a standard presumptive sentence of 18 months' imprisonment with 24 months' postrelease supervision, then suspended the sentence

and granted supervised probation for a term of 24 months. The district court also ordered Quinones to pay various fees and court costs, stating, "And, there are some court-appointed attorney fees you'll be obligated to repay." However, neither the journal entry of sentencing nor the order of probation specified the amount of attorney fees.

Quinones appeals her conviction and the imposition of BIDS fees.

*Does K.S.A. 21-3833 Require Proof that the Witness Perceived the Threat?*

On appeal, Quinones first argues the State failed to prove that Olivarez perceived Quinones' actions, and the district court therefore erred in denying her motion for judgment of acquittal.

The State contends intimidation of a witness is an alternative means crime which can be committed by (1) knowingly and maliciously preventing or dissuading any witness or victim from attending or giving testimony at any civil or criminal trial, proceeding, or inquiry authorized by law, or (2) attempting to prevent or dissuade a witness, from attending or giving testimony at any civil or criminal trial, proceeding, or inquiry authorized by law. The State argues that under the second means, which it utilized in this case, it was not required to prove that the witness or intended victim perceived the threat.

When reviewing the decision on a motion for a judgment of acquittal, we examine the sufficiency of the evidence to support the conviction. In a criminal case, the standard for determining sufficiency of the evidence is whether, after review of all the evidence, viewed in a light most favorable to the State, we are convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Cavaness*, 278 Kan. 469, 479, 101 P.3d 717 (2004).

To the extent resolution of this issue involves statutory interpretation, our review is unlimited. *State v. Storey*, 286 Kan. 7, 9-10, 179 P.3d 1137 (2008). However, this unlimited review is guided by well-established rules of statutory interpretation.

The fundamental rule of statutory interpretation is that the intent of the legislature governs if that intent can be ascertained. *Winnebago Tribe of Nebraska v. Kline*, 283 Kan. 64, 77, 150 P.3d 892 (2007). Our first task is to ascertain the legislature's intent by reading the plain language of the statute. *State v. Stallings*, 284 Kan. 741, 742, 163 P.3d 1232 (2007).

When reading the plain language of a statute, we must give ordinary words their ordinary meanings, avoid speculating about legislative intent, avoid straining to find ambiguities where none exist, and avoid reading the statute to add something not readily found in the text. It is only when the text or language of the statute is unclear or ambiguous that we apply canons of statutory construction or explore legislative history in an effort to ascertain the legislature's intent. *In re K.M.H.*, 285 Kan. 53, 79, 169 P.3d 1025 (2007), *cert. denied* 555 U.S. 937 (2008).

As a general rule, criminal statutes must be strictly construed in favor of the accused, and any reasonable doubt as to the meaning of the statute is decided in favor of the accused. Nevertheless, this rule of strict construction is subordinate to the rule that judicial interpretation must be reasonable and sensible to effect legislative design and intent. *State v. Paul*, 285 Kan. 658, 662, 175 P.3d 840 (2008).

K.S.A. 21-3832(a) defines intimidation of a witness or victim as "knowingly and maliciously preventing or dissuading, or *attempting to prevent or dissuade*: (1) Any witness or victim from attending or giving testimony at any civil or criminal trial, proceeding or inquiry authorized by law." (Emphasis added.) "Maliciously means the defendant acted with an intent to vex, annoy, harm or injure in any way another person, or with an intent to thwart or interfere in any manner with the orderly administration of justice." PIK Crim. 3d 60.06-B.

Quinones was charged with aggravated intimidation of a witness under K.S.A. 21-3833(a)(1), which is intimidation of a witness or victim as defined by K.S.A. 21-3832 when the "act is accompanied by an expressed or implied threat of force or violence against a witness, victim or other person or the property of any witness, victim or other person."

The term "threat" is not defined in K.S.A. 21-3833. However, under the general criminal code provisions, "threat" is defined as "a communicated intent to inflict physical or other harm on any person or on property." K.S.A. 21-3110b(25).

We agree with the State that the plain language of K.S.A. 21-3833 provides that the crime may be committed by alternative means, *i.e.*, knowingly and maliciously (1) preventing or dissuading any witness or victim, *or* (2) attempting to prevent or dissuade a witness or victim, from attending or giving testimony at any civil or criminal trial, proceeding, or inquiry authorized by law, when the act is accompanied by an expressed or implied threat of force or violence against the witness, victim, or other person or the property of any witness, victim, or other person.

Further, we find no language in K.S.A. 21-3833 or in the statute it incorporates, K.S.A. 21-3832, requiring the State to establish that the witness or intended victim perceived the threat when the State seeks to prove the defendant attempted to intimidate a witness. Rather, when as here the State charges the defendant under K.S.A. 21-3833 with attempting to prevent or dissuade a witness from giving testimony at a criminal trial, the State must prove (1) the defendant knowingly and maliciously, (2) attempted to prevent or dissuade a witness from giving testimony at a criminal trial, and (3) the act was accompanied by an expressed or implied threat of force or violence against the witness or the property of the witness.

Because the language of the pertinent statutes is plain and unambiguous, we decline Quinones' invitation to add language not readily found in the statutes. Further, we need not resort to considering statutory construction or exploring legislative history to ascertain the legislature's intent.

Our analysis is supported by *State v. Wright*, 259 Kan. 117, 122, 911 P.2d 166 (1996). There, the court held the criminal threat statute, K.S.A. 21-3419, does not require the State to prove that the defendant knew his or her threat would be communicated to the victim. Rather, the State need only present evidence of "an intent to terrorize or an act in reckless disregard of causing such terror." 259 Kan. at 122.

Further, in *State v. Woolverton*, 284 Kan. 59, 69, 159 P.3d 985 (2007), the court again considered the crime of criminal threat and noted that crime is defined as "any threat to: (1) Commit violence communicated with intent to terrorize another . . . or in reckless disregard of the risk of causing such terror." K.S.A. 21-3419(a)(1). The court clarified that while *Wright* permitted a third party to perceive the threat rather than the intended victim, the statute nevertheless requires that *someone* perceive the threat. 284 Kan. at 69. The *Woolverton* court thus held that the term "communicate" in the criminal threat statute, K.S.A. 21-3419(a)(1), "requires a declarant and a receiver for the threat because the threat must be perceived and comprehended." 284 Kan. at 69.

Here, a courtroom bailiff and a juror testified that Quinones made throat-slicing gestures while Olivarez was testifying against her son, which they both perceived as intended to be threatening or intimidating to Olivarez. When considered in context, a reasonable person could have perceived that Quinones communicated an intent to inflict physical or other harm on Olivarez in an attempt to prevent or dissuade him from testifying against Quinones' son. Thus, we conclude the district court did not err in denying Quinones' motion for judgment of acquittal on this ground.

*Was the State Required to Prove the Elements of the General Attempt Statute?*

Quinones also argues that K.S.A. 21-3833(a)(1) does not criminalize an attempt to intimidate a witness and the State was therefore required to prove the elements of the general attempt statute, K.S.A. 21-3301.

In arguing the district court erred in denying her motion for judgment of acquittal on this ground, Quinones cites *State v. Martens*, 273 Kan. 179, 183-84, 42 P.3d 142 (2002). There, our Supreme Court considered whether K.S.A. 1997 Supp. 65-4159, which prohibited the manufacture of a controlled substance, also prohibited the attempt to manufacture a controlled substance. The court pointed out that both the 1990 and 1993 versions of K.S.A. 65-4159 contained language prohibiting " 'the unlawful manufacturing or attempting to unlawfully manufacture any controlled sub-

stance.' " 273 Kan. at 184. However, the 1994 legislative amendment to K.S.A. 65-4159 omitted the phrase " 'or attempting to unlawfully manufacture' " from the statutory prohibition subsection. 273 Kan. at 184.

Based on the 1994 amendment, the *Martens* court concluded K.S.A. 1997 Supp. 65-4159 "no longer include[d] the crime of attempting to manufacture a controlled substance" and found that "the attempted manufacture of a controlled substance is a separate offense controlled by K.S.A. 21-3301(a)." 273 Kan. at 185.

Thus, *Martens* stands for the proposition that if a criminal statute does not specifically include language prohibiting an attempt to commit that offense, then an attempt is controlled by K.S.A. 21-3301(a), the general attempt statute. See *In re K.M.H.*, 285 Kan. 82 (reciting the well-established rule that specific statutes control over general statutes).

Here, however, K.S.A. 21-3833(a) incorporates the definition of intimidation of a witness from K.S.A. 21-3832(a)(1), which prohibits "knowingly and maliciously preventing or dissuading, *or attempting to prevent or dissuade*," a witness from testifying at a trial. As the State points out, K.S.A. 21-3832 is an alternative means statute, and the crime of intimidation of a witness can be committed by either (1) preventing or dissuading, or (2) attempting to prevent or dissuade, a witness from testifying at trial. See also *State v. Stevens*, 285 Kan. 307, 314-16, 172 P.3d 570 (2007) (interpreting K.S.A. 2006 Supp. 8-1567 as an alternative means statute prohibiting either operating or attempting to operate a motor vehicle while under the influence of alcohol).

Thus, because an attempt to intimidate a witness is a specific and alternative means of committing aggravated intimidation of a witness as proscribed by K.S.A. 21-3833(a)(1), the State was not required to prove the elements of general attempt under K.S.A. 21-3301.

*Did the District Court Err in Instructing the Jury?*

Relying on the same arguments presented above, Quinones asserts the district court erred by failing to give the jury an instruction

she requested, which would have required the jury to find that the alleged threat was communicated to Olivarez.

When considering a trial court's refusal to give a specific instruction, we must view the evidence allegedly supporting that instruction in a light most favorable to the party requesting the instruction. *State v. Hayden*, 281 Kan. 112, 131-32, 130 P.3d 24 (2006).

As discussed, while a threat must be communicated through words or actions and perceived by someone, it need not be perceived by the intended witness or intended victim. Thus, the district court did not err in failing to give Quinones' requested instruction.

Quinones also asserts the district court erred in failing to include an instruction on the lesser included offense of attempted aggravated intimidation of a witness.

However, Quinones failed to timely request a lesser included offense instruction on attempt, as proscribed by K.S.A. 21-3301(a). As such, we may review this issue only for clear error. See *State v. Engelhardt*, 280 Kan. 113, 134, 119 P.3d 1148 (2005). Further, determination of whether a crime is a lesser included offense is a question of law over which this court exercises unlimited review. *State v. Alderete*, 285 Kan. 359, 361-62, 172 P.3d 27 (2007).

Here, the district court gave the jury a lesser included offense instruction on intimidation of a witness under K.S.A. 21-3832(a)(1), which required the State to prove that Quinones "attempted to prevent or dissuade a witness, Stephen Olivarez, from giving testimony at a trial." Nevertheless, Quinones argues the jury should have been given a lesser included offense instruction based upon the elements of attempt pursuant to the general attempt statute, K.S.A. 21-3301.

While an attempt to commit the crime charged is generally a lesser included offense of that crime pursuant to K.S.A. 21-3107(2)(c), as discussed above, the general attempt statute is not controlling and does not create a separate offense of attempted intimidation or aggravated intimidation of a witness. Thus, the district court's failure to give a lesser included offense instruction on attempt under K.S.A. 21-3301 was not clearly erroneous.

*Did the District Court Err in Determining the Severity Level of the Crime?*

Quinones next asserts the district court erred in imposing the penalties for a severity level 6 felony because the jury found that she "attempted to prevent or dissuade" Olivarez from testifying. Quinones relies on K.S.A. 21-3301(c) to support her claim that the district court was required to reduce by two severity levels the appropriate level for the completed crime.

In any appeal, we may review a claim that the sentencing court erred in ranking the severity level of the crime. K.S.A. 21-4721(e)(3). To the extent resolution of this issue involves statutory interpretation we exercise unlimited review. *Storey*, 286 Kan. at 9-10.

Quinones' argument is two-fold. First, she suggests that the identical offense doctrine required that she be sentenced under the lesser penalty provisions of K.S.A. 21-3301(c). Second, Quinones argues that even if she was properly convicted of attempt under K.S.A. 21-3833(a)(1), the penalty reduction provisions of K.S.A. 21-3301(c) nevertheless apply.

Under the identical offense doctrine, a defendant convicted of either of two criminal offenses which have identical elements but are classified differently for purposes of imposing a penalty may be sentenced only under the lesser penalty provision. *State v. Nunn*, 244 Kan. 207, 229, 768 P.2d 268 (1989).

Though her argument is not well developed, Quinones appears to argue that aggravated intimidation of a witness, her crime of conviction, is identical to attempted aggravated intimidation of a witness as prohibited by K.S.A. 21-3301(a).

As discussed above, attempt is an alternative means of committing the crime of aggravated intimidation of a witness under K.S.A. 21-3833(a)(1), and the general attempt statute does not apply here. Thus, we reject Quinones' invitation to apply the identical offense doctrine or the penalty reduction provisions of K.S.A. 21-3301(c).

*Did the District Court Err in Failing to Specify the Amount of BIDS fees?*

Finally, Quinones asserts the district court erred in ordering her to pay BIDS attorney fees without considering her ability to pay or assessing a specific amount as required by K.S.A. 22-4513(b) and *State v. Robinson*, 281 Kan. 538, Syl. ¶ 1, 132 P.3d 934 (2006). The State concedes the court failed to assess a specific amount of BIDS fees at sentencing. Accordingly, we vacate the district court's imposition of BIDS attorney fees and remand for compliance with the mandatory language of K.S.A. 22-4513(b).

Conviction and sentence affirmed; imposition of attorney fees vacated and case remanded with directions to comply with *Robinson*.