(245 P.3d 1)
No. 101,337
No. 101,338

STATE OF KANSAS, *Appellee*, v. JUAN M. AGUIRRE, *Appellant*.

Opinion filed January 7, 2011.

*Rachel Pickering*, of Kansas Appellate Defender Office, for appellant.

*Tamara S. Hicks*, assistant county attorney, *John P. Wheeler, Jr.*, county attorney, and *Steve Six*, attorney general, for appellee.

Before MCANANY, P.J., ATCHESON, J., and LARSON, S.J.

MCANANY, J.: Juan M. Aguirre appeals his convictions and sentences in two cases: a 2006 case in which he was convicted of failing to register under the Kansas Offender Registration Act, K.S.A. 22-4901 *et seq.*; and a 2007 case in which he was convicted of rape,

aggravated indecent liberties with a child, and aggravated intimidation of a victim. The parties are well acquainted with the facts of each case so we need not recount them in detail here. The following brief synopsis should suffice.

Aguirre had been convicted of a sex crime, which resulted in him being required to register under the Kansas Offender Registration Act, K.S.A. 22-4901 *et seq*. The authorities received information that Aguirre had moved from one residence to another without updating his registration under the Act. Following an investigation, Aguirre was charged with violating K.S.A. 22-4904(b), which required him to update his registration within 10 days of his move. His trial in May 2007 resulted in a mistrial. He was retried and convicted in 2008, leading to this appeal.

In the course of the investigation into Aguirre's failure to register under the Act, the Sheriff obtained information that Aguirre may have sexually abused N.R., the 15-year-old daughter of the woman with whom he was living. An investigator interviewed N.R. at school. During that interview N.R. described various incidents of sexual abuse at the hands of Aguirre. In a later interview, however, N.R. recanted her previous statement. At Aguirre's trial for rape, aggravated indecent liberties with a child, and aggravated intimidation of a victim, N.R. again recanted her previous statement. However, the State introduced her prior inconsistent statement along with other evidence of Aguirre's guilt. Aguirre was convicted on all charges and this appeal followed.

Both of Aguirre's appeals were consolidated for these proceedings.

## 2006 CASE

### I. *Motion in Limine*

Aguirre contends that the district court abused its discretion in denying his motion for a mistrial based upon the State's violation of an order in limine. Prior to trial, the court entered an order excluding any reference at trial to Aguirre's prior sex offense. Aguirre and the State stipulated that he had been convicted of a crime that required him to register pursuant to the Kansas Offender Registration Act.

At trial, the State called Sondra Meier, the supervisor of the offender registration unit of the Kansas Bureau of Investigation, to testify about the registration requirements. Meier testified that Kansas law required certain offenders of violent and sexual crimes to register. Aguirre raised a general objection which was overruled and then, at the conclusion of Meier's testimony, moved for a mistrial, which the court denied.

We review the district court's ruling on Aguirre's motion for a mistrial for any abuse of the court's discretion. See *State v. McReynolds*, 288 Kan. 318, 329, 202 P.3d 658 (2009). In doing so, we first consider whether the order in limine was violated. Next, we consider whether Aguirre suffered substantial prejudice from the violation. See *State v. Crum*, 286 Kan. 145, 160, 184 P.3d 222 (2008). In considering the element of prejudice, we examine (1) whether the violation was so gross and flagrant as to deny Aguirre a fair trial, (2) whether the misconduct demonstrated ill will, and (3) the weight the misconduct would have had in the minds of the jurors in light of the other evidence against Aguirre. See *State v. Albright*, 283 Kan. 418, 426-27, 153 P.3d 497 (2007); *State v. Tosh*, 278 Kan. 83, 93, 91 P.3d 1204 (2004).

Clearly, the prosecutor should have better prepared her witness to describe the Offender Registration Unit in a manner consistent with the court's order in limine. Nevertheless, the testimony was not unduly prejudicial. The court informed the prospective jurors during voir dire that Aguirre was charged with failing to register as required by the Kansas Offender Registration Act. It was no secret that Aguirre was an offender who was required to register. It is safe to say that the average layperson knows that if you are convicted of a minor offense you do not have to register with the State every time you move your place of residence. It must be some sort of a big deal if you have to register. The witness categorized the big-deal offenses as violent offenses or sex offenses. The jury was not told which applied to Aguirre. The reference to violent offenses and sex offenses occurred only once. There is nothing to suggest that this single reference was intentional or motivated by ill will towards Aguirre. It certainly was not gross or flagrant. As a result, we conclude that Aguirre was not prejudiced by the witness' de-

scription of the Offender Registration Unit. The trial court did not err in denying his motion for a mistrial.

II. *Exculpatory Evidence*

Next, Aguirre contends that the prosecutor engaged in misconduct by failing to disclose exculpatory evidence. On the morning the trial commenced, the prosecutor advised the court, outside the presence of Aguirre or his counsel, that the preceding day she first learned that Aguirre had earlier claimed that Deputy Widows had raped N.R., the victim in the 2007 case. The prosecutor told the court that the Sheriff's Department conducted an internal investigation of the claim and determined it was unfounded. The district court concluded that the claim did not constitute exculpatory evidence with respect to the crime of failing to register and that the State was not required to disclose it to Aguirre, who obviously already knew of the claim because he made it.

" 'Evidence is exculpatory if it tends to disprove a fact in issue which is material to guilt or punishment.' [Citations omitted.] Evidence is also exculpatory if it bears 'upon the credibility of a key witness on an important issue in the case.' [Citation omitted.]" *State v. Aikins*, 261 Kan. 346, 382, 932 P.2d 408 (1997).

Clearly, whether Deputy Widows had raped N.R. was irrelevant to disprove any fact at issue in Aguirre's trial for failing to register. However, it may have had a bearing on Widows' credibility. But Aguirre cannot complain that the State failed to disclose the claim to him. After all, it was Aguirre who made the claim in the first place.

However, Aguirre may not have known of the internal investigation that followed. But how would that have been exculpatory? The conclusion of the internal investigation was that the claim was unfounded. See *State v. McIntyre*, 259 Kan. 488, 496, 912 P.2d 156 (1996). Could the fact of the claim and the resulting investigation have caused Widows to act in a vengeful way in investigating Aguirre? Clearly not. Aguirre had been tried before for his failure to register under the Act. That trial ended in a mistrial. Aguirre made his rape claim against Widows a couple of weeks later. Widows' investigation had been concluded long before Aguirre's claim

and the internal investigation that followed. Thus, the fact of the claim against Widows and the internal investigation that followed would not have undermined Widows' credibility at trial. The prosecutor did not fail to turn over exculpatory evidence against Aguirre.

### III. *Cumulative Errors*

Next, Aguirre claims that cumulative trial errors deprived him of his right to a fair trial. Here, however, the only possible error was the prosecutor's inadequate preparation of her witness to deal with the court's order in limine. One error does not an accumulation make. Thus, this claim necessarily fails.

### IV. *Criminal History*

Finally, Aguirre claims the use of his criminal history to enhance the penalty for his conviction constituted a violation of due process pursuant to *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). In *State v. Ivory*, 273 Kan. 44, 46-47, 41 P.3d 781 (2002), the Kansas Supreme Court rejected the claim Aguirre now asserts. We are bound by the holding in *Ivory* absent some indication the court is departing from this holding. See *State v. Barajas*, 43 Kan. App. 2d 639, 649, 230 P.3d 784 (2010). We see no such indication. Thus, this claim fails.

### 2007 CASE

### I. *Alternative Means*

Aguirre first claims that his conviction for aggravated intimidation of a victim, as charged by the State, involved more than one means of committing the crime. The State charged Aguirre with aggravated intimidation of a victim as follows:

"That on or about the 1st day of November, 2002 through the 24th day of December, 2002, in Finney County, Kansas, Juan Manuel Aguirre, then and there being present did unlawfully, knowingly and maliciously prevent or dissuade or attempt to prevent or dissuade a victim, witness or person acting on behalf of a victim or a witness, NJR (DOB: 07/07/1991), from making a report of a crime or attempted crime, to a law enforcement, probation, parole, correctional, community correction services or judicial officer, in violation of K.S.A. 21-3833, Aggravated Intimidation of a Witness or Victim, a severity level 6 person felony."

At trial, the district court instructed the jury on the following elements of the crime of aggravated intimidation of a victim:

"1. That the defendant prevented or dissuaded, or attempted to prevent or dissuade, a victim, NJR, from making a report of a crime against an individual, NJR, to any law enforcement, probation, parole, correctional community correction services or judicial officer;

"2. That the victim, NJR, was under 18 years of age;

"3. That the defendant did so knowingly and maliciously; and

"4. That this act occurred on or about the 1st day of November, 2002, through the 24th day of December, 2002, in Finney County, Kansas."

The jury was instructed further:

"As used in this instruction, maliciously means with an intent to vex, annoy, harm or injure in any way another person, or with an intent to thwart or interfere in any manner with the orderly administration of justice."

Aguirre requested a unanimity instruction, but the court refused to give it.

The jury in a criminal case is required to arrive at a unanimous verdict. In a case in which there are alternative means by which the crime can be committed, it is possible for some jurors to arrive at one alternative means to support a conviction and other jurors to settle on the other alternative means. When this occurs, however, this does not subvert the defendant's right to a unanimous verdict if there is substantial evidence to support each alternative means for committing the crime. See *State v. Wright*, 290 Kan. 194, Syl. ¶ 2, 224 P.3d 1159 (2010); *State v. Timley*, 255 Kan. 286, 875 P.2d 242 (1994).

Here, Aguirre points to two sets of alternative means by which the crime of aggravated intimidation of a victim or witness can be committed. With respect to each set, he contends there is insufficient evidence to support both alternative means.

The first set consists of the alternatives of Aguirre either (1) preventing or dissuading N.R. from reporting his sex abuse, or (2) attempting to prevent or dissuade N.R. from reporting his sex abuse. The second set consists of the alternatives of Aguirre either (1) acting with the intent to vex, annoy, harm, or injure N.R., or (2) acting with the intent to thwart or interfere with the orderly administration of justice.

A. *Attempt*

With respect to the first set of alternatives, Aguirre argues that because N.R. ultimately reported Aguirre's sex abuse, there was no evidence to support the second alternative of attempting to prevent or dissuade N.R. from reporting his sex abuse. He relies on *State v. Quinones*, 42 Kan. App. 2d 48, 49, 208 P.3d 335 (2009), *rev. denied* 290 Kan. ___ (May 19, 2010). We do not find *Quinones* particularly persuasive. *Quinones* did not deal with the unanimity issue now before us.

Normally, attempted crimes are distinct from completed crimes and constitute separate crimes. See K.S.A. 21-3301. However, K.S.A. 21-3833 defines aggravated intimidation of a victim or witness to encompass both the successful intimidation and the attempted but unsuccessful intimidation. By so doing, it is clear that whether the crime is committed is not a function of how effective the intimidation was. Rather, there is but one criminal act: to intimidate a victim or witness with the intent to deter the reporting of a crime, whether or not the intimidation is successful. One does not commit the crime of intimidating a witness by alternative means of either doing it or merely trying to do it.

Applying an alternative means analysis to this crime would mean that when there is no unanimity instruction, the State would have to make clear what officer N.R. was intimidated from reporting Aguirre's conduct to—a law enforcement officer, a probation officer, a parole officer, a community correction services officer, or a judicial officer—because all of these various officers are identified in the statute, even if there was no evidence or testimony about any type of officer but one. We do not read the statute in this fashion. To the contrary, the list of officers simply defines the character of the report that a victim must be dissuaded or prevented from making. Likewise, whether the intimidation is successful or not, the gravamen of the statute is the act of intimidation.

The charge in the complaint and the court's instructions did not present alternative means used by Aguirre to intimidate N.R., leaving the possibility of different members of the jury settling on different conduct as a basis to convict. The crime as defined by the

statute is completed at the time of the intimidation regardless of the results of the intimidation. Accordingly, the charge in the complaint and the court's instruction do not present a true alternative means issue.

### B. *Malice*

With respect to the second set of alternatives, Aguirre argues that malice can be established by the alternative means of acting with an intent to vex, annoy, harm, or injure, or by the alternative means of acting with intent to interfere with the administration of justice. Aguirre argues that there was no evidence to support the first of these alternatives.

This argument seems to be an attempt to pound a square peg into a round hole. The concept of alternative means is based on the notion that a crime can be accomplished by more than one act. An accused can commit a battery by (among other things) punching the victim in the nose or by kicking the victim in the pants. If the defendant is accused of both and there is no unanimity instruction, we may very well have an alternative means problem. But here, Aguirre does not point to a multitude of means by which N.R. was intimidated.

We find it a stretch to consider the different states of mind that a defendant may have while carrying out the act of intimidation to be different alternative *means* for committing the crime. The word *means* connotes causality between a proscribed act and its undesirable consequences; a method of accomplishing an end, *i.e.*, of causing an end to occur. The defendant batters the victim by *means* of either punching or kicking. The mental state of malice in its various manifestations that a defendant may have while doing the prohibited act hardly seems to fit the notion of alternative *means* for committing the crime.

But if we accept for the moment Aguirre's alternative means conceit, there is substantial evidence that Aguirre acted with the intent to "vex, annoy, harm or injure" N.R., as well as substantial evidence that he acted with the intent to interfere with the administration of justice. Aguirre does not challenge the latter category, only the former.

N.R. was born in 1991. She reported Aguirre's sexual abuse to authorities in December 2006. The abuse had been going on at least since 2002 when she was 11 years old. Aracely Romo, a neighbor of N.R., testified that beginning in June 2006, N.R. began coming to Romo's house to shower because whenever she tried to shower at home Aguirre would come into the bathroom. N.R. told Romo that Aguirre started sexually abusing her shortly after Aguirre moved in with N.R.'s mother. N.R. told Romo that Aguirre told her not to say anything because if she did, no one would believe her and "the person that was going to be out of the house would be her." Romo told N.R. that she needed to talk to the police so she could get some help. N.R. pleaded with Romo not to say anything to the police.

Viewing the evidence in the light more favoring the State, as we are required to do, there was substantial evidence that during the period of Aguirre's abuse N.R. was deprived of the protection of her family and of the law, and was deprived of any opportunity for psychological counseling to deal with the psychological trauma Aguirre inflicted upon her. Ordinarily, a person intends all the usual consequences of his or her acts. From the history of sexual abuse recounted in the testimony, no one could possibly conclude that N.R. did not suffer injury at the hands of Aguirre. There was ample evidence that in sexually abusing N.R., Aguirre acted with the intent to injure her.

Even if we were to consider the description of malice in the statute as describing alternative means of committing the crime, there was substantial evidence to support both alternative means. Thus, the district court did not err in denying Aguirre's requested unanimity instruction.

## II. *Expert Testimony*

Next, Aguirre contends that the district court abused its discretion in admitting the expert testimony of Sue Dowd. Primarily, Aguirre contends that the expert testimony was unnecessary because the matters discussed in Dowd's testimony were within the knowledge of laypersons. In passing, Aguirre also argues that the expert testimony improperly bolstered the State's case by providing

expert testimony indicating that children rarely make false allegations of sexual abuse.

Prior to trial Aguirre objected to the State's endorsement of Dowd as an expert witness, arguing that expert testimony was unnecessary to assist the jury in resolving the case and that the basis for a child's recantation of previous statements was within the common knowledge of jurors. The court overruled Aguirre's pretrial objection.

Dowd testified at trial. In the course of her direct examination, Aguirre objected twice: the first time he objected because the witness' response was in the form of a narrative (the court sustained the objection), and the second time because the witness' answer was not responsive to the question (the court sustained this objection as well). The first objection was raised 17 pages into Dowd's testimony. Following this first objection Aguirre's counsel asked to approach the bench to lodge another objection. There is no record of the objection raised. After the bench conference, the court stated, "Objection noted."

Aguirre's pretrial objection was not enough. He needed to raise an objection at trial to preserve the issue for appeal. See *State v. Houston*, 289 Kan. 252, Syl. ¶ 10, 213 P.3d 728 (2009). Further, his objection at trial had to be both timely and specific. See K.S.A. 60-404; *State v. King*, 288 Kan. 333, 348, 204 P.3d 585 (2009). It was not timely, and we cannot determine whether it was specific. Aguirre has the burden of furnishing a record on appeal that supports this claim of error. He has not done so. See *State v. Paul*, 285 Kan. 658, 670, 175 P.3d 840 (2008). He failed to make a timely objection to this evidence at trial. We have no record of him having renewed his pretrial objection at trial. If he did renew it in a *King*-specific manner, it was not preserved in the record.

Besides, the admission of expert testimony generally lies within the broad discretion of the district court, and the court's decision regarding the admission of such testimony will not be overturned absent a showing of an abuse of that discretion. *State v. Reyna*, 290 Kan. 666, 682, 234 P.3d 761 (2010). In *Reyna* our Supreme Court found no abuse of discretion in the admission of expert testimony in a comparable context. See *State v. Reed*, 40 Kan. App. 2d 269,

273-75, 191 P.3d 341 (2008), *rev. denied* 290 Kan. 1102 (2010). Accordingly, Aguirre's claim regarding Dowd's testimony fails.

### III. *Question About N.R.'s Motives*

During the State's cross-examination of Aguirre, the prosecutor asked, "Why would [N.R.] say these things if they weren't true?" The court permitted Aguirre to answer this question. Aguirre now argues that the district court erred in permitting the State to ask him to comment on the credibility of his accuser and in permitting the prosecutor to put to him an argumentative question.

At trial, however, Aguirre's sole objection was that the question called for the witness to speculate. Aguirre asks us to declare that the district court committed error based upon an objection which was never raised at trial. We should not countenance such a judicial sucker punch. Consistent with the rule announced in *King*, Aguirre was required to raise before the trial court the specific objection upon which he now predicates error.

Besides, we fail to see any prejudice to Aguirre from the court's ruling that permitted him to answer. To the contrary, the question seems to have inured to Aguirre's benefit. This was the prosecutor's last question to Aguirre on cross-examination, and a cautionary example of how that one last question can sometimes be a killer.

Aguirre was not asked to speculate about N.R.'s motivation in accusing him. He knew why, in his view, N.R. made these claims against him. He had already heard the State's investigator's testimony in cross-examination, which his counsel would later recount in closing argument, to the effect that N.R. said she did not like Aguirre because he was mean to her, would not let her go out with her friends, and told her how to dress. This was one of the central theories of Aguirre's defense. And so, Aguirre responded to the prosecutor's last question relating to why N.R. would make these claims against him with the following answer: "She never really accepted me as her mom's boyfriend or husband. She never really, really liked me." The last thing the jurors heard from Aguirre's mouth at trial was his assertion that N.R. made all this up to get back at him. We fail to see how Aguirre was prejudiced by being asked this improvident and improper question.

## IV. *Sufficiency of Evidence of Rape and Aggravated Indecent Liberties With A Child*

Aguirre argues that because there was no physical evidence to support the rape and aggravated indecent liberties charges and because N.R. recanted her accusation against him, there was insufficient evidence to support his convictions on these charges.

In examining this claim we review the record in a light more favoring the State to determine whether a rational factfinder could have concluded beyond a reasonable doubt that Aguirre committed these crimes. See *State v. Trautloff*, 289 Kan. 793, 800, 217 P.3d 15 (2009). In doing so we do not weigh conflicting evidence, evaluate the witnesses' credibility, or redetermine questions of fact. *State v. Johnson*, 289 Kan. 870, 888, 218 P.3d 46 (2009).

When a witness recants her testimony, the State may present the witness' prior inconsistent statements to establish the charged offenses. That is what happened here. While the inconsistent statements must be weighed by the jury, the prior statements may be used to support a conviction. See *State v. Coppage*, 34 Kan. App. 2d 776, 781, 124 P.3d 511 (2005).

Examining the record in the light more favoring the State, there was ample evidence to support these convictions.

## V. *Cumulative Error*

Next, Aguirre claims that cumulative trial errors deprived him of his right to a fair trial. An accumulation of trial errors, none of which in itself is so prejudicial as to require a reversal, may collectively be so prejudicial as to deprive a criminal defendant of a fair trial. *State v. Foster*, 290 Kan. 696, 726, 233 P.3d 265 (2010). Unfortunately for Aguirre, there are no trial errors here to accumulate. Thus, this claim necessarily fails.

## VI. *Sentencing*

Finally, Aguirre contends that the use of his criminal history to enhance the penalty imposed for his crimes constituted a violation of due process as articulated in *Apprendi*, 530 U.S. at 490.

The district court sentenced Aguirre to 586 months in prison for the base offense of rape, 86 months for aggravated indecent liberties with a child, and 18 months for aggravated intimidation of a witness or victim. Based upon Aguirre's criminal history score, his sentence for rape was the standard grid box penalty for the crime of conviction. See K.S.A. 2006 Supp. 21-4704(a) (nondrug sentencing grid); K.S.A. 21-3502(c). The sentence for aggravated indecent liberties with a child was the aggravated grid box penalty for the crime of conviction, which was then doubled according to the persistent sex offender provisions. See K.S.A. 2006 Supp. 21-4704(a) and (j); K.S.A. 21-3504(c). Finally, the sentence imposed for aggravated intimidation of a witness or victim was the standard grid box penalty for the crime of conviction. See K.S.A. 2006 Supp. 21-4704(a); K.S.A. 21-3833(b).

The only enhancement to Aguirre's sentences for rape and aggravated intimidation of a witness or victim occurred by operation of the Kansas Sentencing Guidelines Act (KSGA) because of Aguirre's criminal history. In *Ivory*, 273 Kan. at 46-47, the Kansas Supreme Court rejected a due process challenge to the use of criminal history under the KSGA to calculate an offender's sentence.

Similarly, the imposition of the aggravated penalty within the applicable sentencing grid box does not violate due process as interpreted by *Apprendi*. See *State v. Johnson*, 286 Kan. 824, Syl. ¶ 5, 190 P.3d 207 (2008). Further, the Kansas Supreme Court has held that the application of the persistent sex offender sentencing enhancements does not violate due process as interpreted in *Apprendi* so long as the application of the sentencing statute does not require the district court to make any findings regarding the prior qualifying conviction. See *State v. Allen*, 283 Kan. 372, 378-79, 153 P.3d 488 (2007). Here, Aguirre's prior conviction was aggravated indecent liberties with a child, a statutorily defined sexually violent offense. See K.S.A. 22-3717(d)(2)(B). No factual findings regarding Aguirre's sentencing enhancement were required.

We are bound by our Supreme Court's opinions in *Ivory*, *Allen*, and *Johnson*, absent some indication the court is departing from them. See *State v. Barajas*, 43 Kan. App. 2d 639, 649, 230 P.3d

784 (2010). We see no such indication. Thus, Aguirre's sentencing arguments fail.

Affirmed.