Nos. 101,337
101,338

STATE OF KANSAS, *Appellee*, v. JUAN M. AGUIRRE, *Appellant*.

(290 P.3d 612)

Opinion filed December 21, 2012.

*Rachel L. Pickering*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Tamara S. Hicks*, deputy county attorney, argued the cause, and *Brian Sherwood*, deputy county attorney, *John P. Wheeler*, county attorney, *Derek Schmidt*, attorney general, and *Steve Six*, former attorney general, were on the briefs for appellee.

The opinion of the court was delivered by

MORITZ, J.: The Court of Appeals affirmed Juan Aguirre's convictions of rape, aggravated indecent liberties with a child, and aggravated intimidation of a victim. *State v. Aguirre*, 45 Kan. App. 2d 141, 155, 245 P.3d 1, *rev. granted* 292 Kan. 966 (2011). We granted Aguirre's petition for review to consider his claim that the State's failure to present sufficient evidence to support the alternative means of committing the crime of aggravated intimidation of a witness under K.S.A. 21-3833 requires reversal of his conviction pursuant to *State v. Wright*, 290 Kan. 194, 224 P.3d 1159 (2010).

While we disagree with some of the panel's rationale, we agree with its conclusion that K.S.A. 21-3832, which defines the crime of intimidation of a witness, does not contain the alternative means alleged by Aguirre. Specifically, applying *State v. Brown*, 295 Kan. 181, 284 P.3d 977 (2012), we conclude that the legislature did not

intend the phrase "preventing or dissuading, or attempting to prevent or dissuade" to state alternative means of intimidation. Instead, this language prohibits only one distinct type of conduct— *i.e.*, the defendant's act of intimidating the victim. And, as the panel pointed out, whether that act of intimidation is successful or unsuccessful is immaterial to whether the defendant committed the intimidating conduct. *Aguirre*, 45 Kan. App. 2d at 148-49.

We reach a similar conclusion regarding the definition of "malice" contained in K.S.A. 21-3831(b), which requires (1) acting with an intent to vex, annoy, harm, or injure or (2) acting with an intent to thwart or interfere in any manner with the orderly administration of justice. While we reject the panel's conclusion that alternative mental states cannot form alternative means of committing a crime, we nevertheless conclude that the statutory definition of malice does not create such means. Instead, it simply elaborates on that element of the crime.

Because the evidence was sufficient to establish that Aguirre attempted to prevent or dissuade his victim from reporting his crimes, and that he acted with the requisite malice in doing so, we affirm Aguirre's conviction for aggravated intimidation of a witness.

FACTUAL AND PROCEDURAL BACKGROUND

In December 2006, law enforcement officers were investigating allegations that the victim in this case, N.R., and her brother, A.R., were being physically abused by their mother and their mother's boyfriend, Aguirre. David Sander, an investigator with the Finney County Sheriff's Office, interviewed N.R. at her school.

During the interview, 15-year-old N.R. disclosed that Aguirre had been sexually abusing her for several years. Specifically, N.R. reported that Aguirre would try to look at her while she was in the shower and that Aguirre had touched her inappropriately on several occasions. N.R. also disclosed that she and Aguirre had sexual intercourse sometime between Thanksgiving and Christmas of 2002, when N.R. was 11 years old. Immediately after the intercourse, Aguirre told N.R. not to tell anyone about the incident. Aguirre also told N.R. that he would get her in trouble with her

mother if she told anyone. After finishing her interview with Sander, N.R. signed a written statement detailing the sexual abuse.

During a follow-up interview with Sander in February 2007, N.R. recanted her disclosures. She claimed she lied about Aguirre sexually abusing her because she did not like Aguirre, he was too strict with her, he complained about the way she dressed, and he would not let her go out when she wanted to. N.R. denied that anyone had pressured her to change her story.

In March 2007, the State charged Aguirre with rape, aggravated indecent liberties with a child, and aggravated intimidation of a witness or victim. Regarding the last charge, the State alleged:

"That on or about the 1st day of November, 2002 through the 24th day of December, 2002, in Finney County, Kansas, Juan Manuel Aguirre, then and there being present did unlawfully, knowingly, and maliciously prevent or dissuade or attempt to prevent or dissuade a victim, witness or person acting on behalf of a victim or a witness, NJR (DOB: XX/XX/1991), from making a report of a crime or attempted crime, to a law enforcement, probation, parole, correctional, community correction services or judicial officer, in violation of K.S.A. 21-3833, Aggravated Intimidation of a Witness or Victim, a severity level 6 person felony."

At trial, Sander and N.R. testified about N.R.'s disclosures in her first interview. Sander and N.R. also testified that N.R. recanted those disclosures in her second interview. N.R. testified she told Sander during the first interview that Aguirre told her not to tell anyone about the sexual intercourse that took place in 2002. Additionally, the State admitted N.R.'s written statement without objection. In that statement, N.R. said that after the first incident of sexual intercourse, Aguirre told her not to tell her mother anything.

Aguirre, who testified on his own behalf, denied the sexual abuse allegations and suggested N.R. made false allegations because she did not like him.

Regarding the charge of aggravated intimidation of a victim, the district court instructed the jury:

"The defendant is charged in count two with the crime of aggravated intimidation of a victim. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

1. That the defendant prevented or dissuaded, or attempted to prevent or dissuade, a victim, NJR, from making a report of a crime against an individual, NJR,

to any law enforcement, probation, parole, correctional community correction services or judicial officer;

2. That the victim, NJR, was under 18 years of age;

3. That the defendant did so knowingly and maliciously; and

4. That this act occurred on or about the 1st day of November, 2002, through the 24th day of December, 2002, in Finney County, Kansas.

"As used in this instruction, maliciously means with an intent to vex, annoy, harm or injure in any way another person, or with an intent to thwart or interfere in any manner with the orderly administration of justice."

The jury found Aguirre guilty as charged. The district court imposed a controlling prison sentence of 672 months and ordered the sentence served consecutive to a 130-month prison sentence in another case.

Aguirre directly appealed, raising several issues. The Court of Appeals rejected each of Aguirre's arguments and affirmed his convictions and sentence. *Aguirre*, 45 Kan. App. 2d 141. We granted Aguirre's petition for review, in part, to review three issues related to his conviction of aggravated intimidation of a victim or witness: (1) whether the legislature intended the phrase "preventing or dissuading, or attempting to prevent or dissuade" to provide alternative means of committing the crime of intimidation of a witness or victim under K.S.A. 21-3832; (2) whether the definition of malice in K.S.A. 21-3831(b) creates alternative means of committing the crime of aggravated intimidation of a witness or victim; and (3) whether the district court erred in refusing Aguirre's request for a unanimity instruction.

## DISCUSSION

In *State v. Timley*, 255 Kan. 286, 289, 875 P.2d 242 (1994), this court established what has been referred to as the "alternative means rule" and its corollary "super-sufficiency requirement":

" '[W]here a single offense may be committed in more than one way, there must be jury unanimity as to *guilt* for the single crime charged. Unanimity is not required, however, as to the *means* by which the crime was committed so long as substantial evidence supports each alternative means. [Citations omitted.]' " 255 Kan. at 289 (quoting *State v. Kitchen*, 110 Wash. 2d 403, 410, 756 P.2d 105 [1988]).

In *State v. Wright*, 290 Kan. 194, 201, 206, 224 P.3d 1159 (2010), this court reinforced that a criminal defendant possesses a statutory right under K.S.A. 22-3421 to a unanimous jury verdict and that the enforcement of the *Timley* rule and its corollary super-sufficiency requirement "is the only choice" to ensure that statutory right.

Most recently, in *Brown*, we reiterated *Timley*'s alternative means rule and its corollary super-sufficiency requirement and declined the State's invitation to reconsider *Wright*'s conclusion that enforcement of that rule is necessary to protect a criminal defendant's statutory right to jury unanimity. *Brown*, 295 Kan. at 188-89.

In *Brown*, we also refined our method of identifying alternative means within a statute. Specifically, we explained that our determination of whether a statute provides alternative means of committing a crime is governed by legislative intent, and we identified several guidelines to be used in ascertaining that intent. 295 Kan. at 189-200. Because legislative intent governs, our first task is to consider the language of the statute to determine whether the legislature intended to create alternative means of committing the crime at issue. 295 Kan. at 193-94. "Issues of statutory interpretation and construction, including issues of whether a statute creates alternative means, raise questions of law reviewable de novo on appeal." 295 Kan. at 193-94.

The statute at issue here, K.S.A. 21-3832, provides, in relevant part:

"(a) Intimidation of a witness or victim is knowingly and maliciously *preventing or dissuading, or attempting to prevent or dissuade*:

. . . .

(2) any witness, victim or person acting on behalf of a victim from:

(A) Making any report of the victimization of a victim to any law enforcement officer, prosecutor, probation officer, parole officer, correctional officer, community correctional services officer or judicial officer." (Emphasis added.)

Initially, we note that Aguirre does not challenge the application of section (a)(2)(A) of the statute. Instead, he focuses on section (a), contending it creates two sets of alternative means and the State was required to present sufficient evidence as to both sets of alternative means.

*Preventing or dissuading a victim from reporting a crime and attempting to prevent or dissuade a victim from reporting a crime are not alternative means of committing the crime of aggravated intimidation of a victim.*

First, Aguirre argues aggravated intimidation of a victim is an alternative means crime because it criminalizes (1) preventing or dissuading *or* (2) attempting to prevent or dissuade a victim from reporting a crime. In support of his argument, Aguirre cites *State v. Stevens*, 285 Kan. 307, 321, 172 P.3d 570 (2007), where this court held that "operating" and "attempting to operate" a vehicle are alternative means of committing the crime of driving under the influence (DUI) under K.S.A. 2006 Supp. 8-1567(a). But after Aguirre filed his petition for review in this case, we reconsidered our conclusion in *Stevens* in light of *Brown*. See *State v. Ahrens*, 296 Kan. 151, 159, 290 P.3d 629 (2012).

In *Brown*, we stated:

"In examining legislative intent, a court must determine for each statute what the legislature's use of a disjunctive 'or' is intended to accomplish. Is it to list alternative distinct, material elements of a crime—that is, the necessary *mens rea*, *actus reus*, and, in some statutes, a causation element? Or is it to merely describe a material element or a factual circumstance that would prove the crime? The listing of alternative distinct, material elements, when incorporated into an elements instruction, creates an alternative means issue demanding super-sufficiency of the evidence. But merely describing a material element or a factual circumstance that would prove the crime does not create alternative means, even if the description is included in a jury instruction. [Citation omitted.]" 295 Kan. at 194.

Applying *Brown*'s refined alternative means analysis to the DUI statute at issue in *Ahrens*, we concluded that the legislature did not intend to create alternative means of committing DUI by placing the disjunctive "or" between the term "operate" and the phrase "attempt to operate" in K.S.A. 2008 Supp. 8-1567(a). Instead, we concluded the legislature employed the phrase "operate or attempt to operate" in 8-1567(a) to encompass a broader set of factual circumstances that could establish an essential element of DUI—driving. See *Ahrens*, 296 Kan. at 160; *Brown*, 295 Kan. at 196-200.

Because *Stevens'* alternative means analysis is no longer applicable after *Ahrens*, it does not support Aguirre's argument in this case.

In rejecting Aguirre's alternative means argument, the panel reasoned:

"K.S.A. 21-3833 defines aggravated intimidation of a victim or witness to encompass both the successful intimidation and the attempted but unsuccessful intimidation. By so doing, it is clear that whether the crime is committed is not a function of how effective the intimidation was. Rather, there is but one criminal act: to intimidate a victim or witness with the intent to deter the reporting of a crime, whether or not the intimidation is successful. One does not commit the crime of intimidating a witness by alternative means of either doing it or merely trying to do it." *Aguirre*, 45 Kan. App. 2d at 148.

The panel further concluded that "whether the intimidation is successful or not, the gravamen of the statute is the act of intimidation." 45 Kan. App. 2d at 148. The panel reasoned that neither the charging document nor the jury instructions presented "alternative means used by Aguirre to intimidate N.R., leaving the possibility of different members of the jury settling on different conduct as a basis to convict." 45 Kan. App. 2d at 148. Instead, the panel found that the crime of aggravated intimidation as defined by the statute "is completed at the time of the intimidation regardless of the results of the intimidation." 45 Kan. App. 2d at 148-49.

The panel's decision is persuasive, particularly when considered in light of *Brown*. There, we noted that statutory alternatives are not alternative means if the alternatives do not state "alternative distinct, material elements of a crime—that is, separate or distinct *mens rea, actus reus*, and, in some statutes, causation elements." *Brown*, 295 Kan. at 200. Here, as the panel pointed out, the crime of aggravated intimidation is complete when the defendant, with the requisite intent, commits an act to intimidate the victim. Thus, the statute prohibits only one distinct type of conduct or *actus reus*—i.e., the act of intimidating the witness or victim. Whether that act of intimidation ultimately is successful or unsuccessful is immaterial because the crime has already been completed. Moreover, whether the intimidation is successful or unsuccessful is solely

dependent upon the reaction of the victim rather than any affirmative action on the part of the defendant.

Aguirre also relies on *State v. Quinones*, 42 Kan. App. 2d 48, 208 P.3d 335 (2009), *rev. denied* 290 Kan. 1102 (2010), in support of his suggestion that the aggravated intimidation statute contains alternative means of committing the crime. As Aguirre points out, the panel in *Quinones* held that "K.S.A. 21-3832 is an alternative means statute, and the crime of intimidation of a witness can be committed by either (1) preventing or dissuading, or, (2) attempting to prevent or dissuade, a witness from testifying at trial." 42 Kan. App. 2d at 56. However, our review of *Quinones* indicates that holding was not necessary to the panel's decision because that case did not present an alternative means issue.

Instead, the *Quinones* panel was concerned with whether (1) K.S.A. 21-3833 requires proof that the witness actually perceived the threat; and (2) whether the inclusion of the "attempt" language in the statute required the State to prove the elements defined in the attempt statute, K.S.A. 21-3301(a). 42 Kan. App. 2d at 55-56. In responding to the second of these issues, the State asserted that intimidation of a witness is an alternative means crime and one of the means of committing the crime is by attempting to prevent or dissuade the witness from testifying and, therefore, the State was not required to prove the elements from the attempt statute.

It does not appear that Quinones disagreed with the State's suggestion that the statute provided for alternative means and that attempt was one of those means. Instead, Quinones simply disagreed with the State's assertion that the attempt elements did not apply. In any event, the *Quinones* panel concluded that because the crime of intimidation of a witness encompasses an attempt to prevent or dissuade the witness from testifying at trial, the State is not required to set forth or prove the elements of the attempt statute. 42 Kan. App. 2d at 55-56 (discussing *State v. Martens*, 273 Kan. 179, 42 P.3d 142, *modified* 274 Kan. 459, 54 P.3d 960 [2002]). Therefore, the *Quinones* panel's conclusion that K.S.A. 21-3833 contains alternative means of committing the crime of aggravated intimidation of a witness is dicta.

In conclusion, we affirm the panel's conclusion in this case that (1) preventing or dissuading a victim from reporting a crime and (2) attempting to prevent or dissuade a victim from reporting a crime are not alternative means of committing the crime of aggravated intimidation of a victim.

*The statutory definition of "malice" does not create alternative means of committing aggravated intimidation of a victim.*

Next, Aguirre argues the State alleged alternative means to support the specific intent element of the crime, *i.e.*, that Aguirre acted maliciously by either (1) acting with an intent to vex, annoy, harm, or injure N.R., or (2) acting with an intent to thwart or interfere in any manner with the orderly administration of justice.

The State contends the definition of "malice" does not create alternative means because "the issue of alternative means has to do with different acts which the defendant may have done to accomplish the crime" rather than "the state of mind of the person committing the criminal act."

The relevant statutory language defines the crime of aggravated intimidation of a witness as

*"knowingly and maliciously* preventing or dissuading, or attempting to prevent or dissuade: . . . (2) any witness, victim or person acting on behalf of a victim from:

(A) Making any report of the victimization of a victim to any law enforcement officer, prosecutor, probation officer, parole officer, correctional officer, community correctional services officer or judicial officer." (Emphasis added.) K.S.A. 21-3832.

On its face, the phrase "knowingly and maliciously" does not create alternative means and Aguirre does not suggest otherwise. Instead, he finds alternative means in the statute defining the term "malice," K.S.A 21-3831(b). That statute provides that for purposes of the crime of aggravated intimidation of a victim, " '[m]alice' means an intent to vex, annoy, harm or injure in any way another person or an intent to thwart or interfere in any manner with the orderly administration of justice." K.S.A. 21-3831(b). Aguirre argues the statutory definition of "malice" creates alternative means of acting maliciously and, therefore, creates alternative means of committing the crime of aggravated intimidation of a victim.

The panel rejected Aguirre's argument, reasoning,

"The concept of alternative means is based on the notion that a crime can be accomplished by more than one act. An accused can commit a battery by (among other things) punching the victim in the nose or by kicking the victim in the pants. If the defendant is accused of both and there is no unanimity instruction, we may very well have an alternative means problem. But here, Aguirre does not point to a multitude of means by which N.R. was intimidated.

"We find it a stretch to consider the different states of mind that a defendant may have while carrying out the act of intimidation to be different alternative *means* for committing the crime. The word *means* connotes causality between a proscribed act and its undesirable consequences; a method of accomplishing an end, *i.e.* of causing an end to occur. The defendant batters the victim by *means* of either punching or kicking. The mental state of malice in its various manifestations that a defendant may have while doing the prohibited act hardly seems to fit the notion of alternative *means* for committing the crime." *Aguirre*, 45 Kan. App. 2d at 149.

Aguirre specifically takes issue with the panel's conclusion that "[t]he various manifestations of the mental state of malice that a defendant may have while doing the prohibited act do not constitute alternative means for committing the crime." *Aguirre*, 45 Kan. App. 2d 142, Syl. ¶ 5.

On this point we agree with Aguirre. We have recently clarified that, in some cases, alternative means of committing a crime can be based on alternative mental states of the defendant. See *Brown*, 295 Kan. at 190-91. But we agree with the panel's ultimate conclusion that the statutory definition of malice does not create alternative means of committing aggravated intimidation of a victim.

In *Brown,* we clarified that there is a distinction between statutes that define the elements of a crime and statutes that define or elaborate upon the terms used to define the crime. 295 Kan. at 198. Specifically, we agreed with the Washington Supreme Court that " '[d]efinition statutes [that merely elaborate on elements rather than define the crime] do not create additional alternative means of committing an offense.' " 295 Kan. at 198 (quoting *State v. Linehan*, 147 Wash. 2d 638, 646, 56 P.3d 542 [2002]). Here, the statutory definition of malice merely elaborates upon the term "maliciously" as it is used in K.S.A. 21-3832; it does not define the crime of aggravated intimidation of a victim.

Accordingly, we reject the panel's reasoning to the extent it suggests that alternative mental states cannot create alternative means of committing a crime. But we affirm the panel's conclusion that the statutory definition of malice does not create alternative means of committing aggravated intimidation of a victim.

*The district court did not err when it denied Aguirre's request for a unanimity instruction.*

Finally, Aguirre claims the district court should have granted his request for a unanimity instruction on the specific intent element of aggravated intimidation of a victim because the jury was instructed on two alternative means by which he could have acted maliciously.

Because the statutory definition of malice does not create alternative means of committing the crime, the district court did not err when in denied Aguirre's request for a unanimity instruction. Further, even if the jury had been presented with alternative means of malice, Aguirre would not have been entitled to a unanimity instruction. See *State v. Bailey*, 292 Kan. 449, 458, 255 P.3d 19 (2011) (discussing differences between multiple acts and alternative means and stating "[a]s alternate means, the felony-murder instruction did not require a unanimity instruction"); *State v. Sanborn*, 281 Kan. 568, 569, 132 P.3d 1277 (2006) ("[a] unanimity instruction is used when the State charges one crime but relies on multiple acts to support that one crime."). Accordingly, we affirm the panel's decision affirming the district court's denial of Aguirre's request for a unanimity instruction.

Judgment of the Court of Appeals affirming the district court on the issues subject to our review is affirmed in part and reversed in part. Judgment of the district court on those issues is affirmed.