NOT DESIGNATED FOR PUBLICATION

No. 112,531

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JAMES EDWIN SPEER,
*Appellant*.


MEMORANDUM OPINION

Appeal from Pawnee District Court; BRUCE T. GATTERMAN, judge. Opinion filed February 5, 2016. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Kevin B. Salzman*, assistant county attorney, *John Settle*, county attorney, and *Derek Schmidt*, attorney general, for appellee.


Before ARNOLD-BURGER, P.J, GREEN and STANDRIDGE, JJ.


*Per Curiam*:  James Edwin Speer appeals his aggravated intimidation of a witness conviction. He argues on appeal that the evidence presented at trial was insufficient to support his conviction. He also argues that the district court erroneously admitted evidence regarding the nature of his relationship with M.V., the person Speer was alleged to have intimidated.

FACTS

This is an appeal from Pawnee County case 13-CR-212. In Pawnee County case 13-CR-136, Speer was charged with two counts of aggravated indecent liberties with a child. The State alleged that the victim in that case was M.V. Speer was arrested and placed in the custody the Pawnee County Sheriff's Department in July 2013.

On October 7, 2013, M.V. and her father went to the Larned Police Department and met with Sergeant Anthony Boor. M.V. told Boor she had received phone calls from Speer. M.V.'s father told Boor that Speer was not supposed to be contacting M.V. Boor contacted Jeff King, a detective with the Pawnee County Sheriff's Office. King had investigated Speer in relation to 13-CR-136. King reported that M.V. was the alleged victim in 13-CR-136. After Speer was arrested in that case, King told Speer he was not permitted to have any contact with M.V. Speer was still in custody when M.V. reported Speer's phone calls to the police.

King accessed the jail phone log system and searched it for M.V.'s phone number. The phone log system at the jail tracked, among other things, the identity of the caller, the number called, and whether or not the phone call actually connected. All outgoing calls were also recorded. The audio recording of a phone call made on October 5, 2013, was played for the jury, and a transcript of the audio recording was admitted into evidence.

The transcript of the October 5, 2013, phone call reflected a conversation between a male voice and a female voice. The male identified himself as "James." M.V. testified at trial that the other voice belonged to her. During the call, Speer asked M.V. if she had been getting his letters. She said she had received them, but she had not read them. Next, Speer asked M.V. if she would call Speer's mother. M.V. responded by saying that she was not supposed to be in contact with Speer and that she could get in trouble for talking to him. Then the following exchange occurred:

"MALE VOICE: I know. I promise, But I just—could you write me at Sarah's?

"FEMALE VOICE:  No.

"MALE VOICE:  Why not? Hey? Are you there?

"FEMALE VOICE:  Yeah.

"MALE VOICE:  I'm sorry. I'm shaking right now I'm so nervous. You know that?

"FEMALE VOICE:  No.

"MALE VOICE:  You know you ain't got to go, right, or you ain't got to say that?"

A few moments later, Speer continued:

"MALE VOICE: Hey. All right. Hey. Can you listen to me for a minute?

"FEMALE VOICE:  What?

"MALE VOICE:  Just I don't know, like, what I did to like upset you or anything, but I know that—I know I have read everything and I already know what has been said and I just really wish you wouldn't because you know what that's going to do to me. You know I've never done anything like that—

"FEMALE VOICE:  I can't. I really can't, like seriously.

"MALE VOICE:  I know, but I have always been there for you. I have always had your back. Please don't do this to me."

Speer stated during the conversation that although there were things he could tell the police about M.V., he had not done so yet. Later in the conversation, Speer asked M.V. if she had been subpoenaed. When M.V. said yes, Speer responded, "Will you please, please do what's right?" Then, he told M.V. he was "looking at . . . 64 years over this." M.V. suggested that Speer should have taken a deal that was offered to him, but Speer said he was not going to because he "believed in [her]." At the end of the phone call, M.V. told Speer three times that she had to go. The last thing Speer said before the recording ended was "[j]ust do what's right."

The State charged Speer with aggravated intimidation of a witness. At the time of trial in this case, M.V. was 14 years old. She testified she knew Speer because they previously dated. M.V. believed Speer called her on October 5, 2013, because he did not want her to go to court and testify against him. M.V. nevertheless appeared and testified against Speer in case 13-CR-136.

On cross-examination, M.V. testified that during the call, Speer did not threaten her, her family, or himself. She also said she did not believe he was trying to intimidate her. But she did say that when Speer asked her to do the right thing, she interpreted that to mean she should not testify against him. She readily acknowledged that Speer's statements did not actually dissuade her from testifying.

When the State rested its case, Speer's counsel moved to dismiss the charges against his client or, alternatively, for judgment of acquittal. The district court denied the motion. Speer elected not to present any evidence at trial. The jury found Speer guilty. The district court sentenced Speer to 43 months in prison.

ANALYSIS

*Sufficiency of the evidence*

Speer argues on appeal that the evidence presented at trial was insufficient to convict him. When reviewing the sufficiency of the evidence following a conviction in a criminal case, the appellate court looks at all the evidence in a light most favorable to the prosecution and determines whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Frye*, 294 Kan. 364, 374-75, 277 P.3d 1091 (2012). This court will not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses. A conviction may be based entirely on circumstantial

4

evidence and the reasonable inferences deducible from that evidence. *State v. Lewis*, 301 Kan. 349, 371, 344 P.3d 928 (2015).

Speer was convicted of violating K.S.A. 2015 Supp. 21-5909, which states in relevant part:

"(a) Intimidation of a witness or victim is preventing or dissuading, or attempting to prevent or dissuade, with an intent to vex, annoy, harm or injure in any way another person or an intent to thwart or interfere in any manner with the orderly administration of justice:

(1) Any witness or victim from attending or giving testimony at any civil or criminal trial, proceeding or inquiry authorized by law; or

(2) any witness, victim or person acting on behalf of a victim from:

(A) Making any report of the victimization of a victim to any law enforcement officer, prosecutor, probation officer, parole officer, correctional officer, community correctional services officer or judicial officer, the secretary of the department of social and rehabilitation services or any agent or representative of the secretary, or any person required to make a report pursuant to K.S.A. 2014 Supp. 38-2223, and amendments thereto;

(B) causing a complaint, indictment or information to be sought and prosecuted, or causing a violation of probation, parole or assignment to a community correctional services program to be reported and prosecuted, and assisting in its prosecution;

(C) causing a civil action to be filed and prosecuted and assisting in its prosecution; or

(D) arresting or causing or seeking the arrest of any person in connection with the victimization of a victim.

"(b) Aggravated intimidation of a witness or victim is intimidation of a witness or victim, as defined in subsection (a), when the:

(1) Act is accompanied by an expressed or implied threat of force or violence against a witness, victim or other person or the property of any witness, victim or other person;

(2) act is in furtherance of a conspiracy;

5

(3) act is committed by a person who has been previously convicted of corruptly influencing a witness or has been convicted of a violation of this section or any federal or other state's statute which, if the act prosecuted was committed in this state, would be a violation of this section;

(4) witness or victim is under 18 years of age; or

(5) act is committed for pecuniary gain or for any other consideration by a person acting upon the request of another person."

As this appears to be an alternative means crime, we note that the jury was specifically instructed as follows:

"The defendant is charged with aggravated intimidation of a victim. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. The defendant attempted to dissuade a victim, to-wit: M.V., from attending or giving testimony at any criminal trial;

"2. This act was done with the intent to thwart or interfere in any manner with the orderly administration of justice;

"3. This act was committed against a victim who was under 18 years of age; and

"4. That this act occurred on or about the 5th day of October, 2013 in Pawnee County, Kansas."

On appeal, Speer makes three distinct arguments attacking the sufficiency of the evidence presented at trial. He first argues that the State failed to establish that Speer attempted to dissuade M.V. Specifically, he argues that this element of the crime was not established because Speer never made any threats, M.V. did not feel as if Speer was trying to intimidate her, and M.V. was not actually dissuaded from testifying against Speer. We are not persuaded by any of these arguments.

First, Speer's focus on the effect Speer's statements had on M.V. is misplaced. The Kansas Supreme Court has ruled that courts should utilize the reasonable person test in

aggravated intimidation cases. The effect of words or actions on a victim is judged under an objective, not a subjective standard. *State v. Phelps*, 266 Kan. 185, 195, 967 P.2d 304 (1998). Here, there was ample circumstantial evidence for the jury to find beyond a reasonable doubt that Speer attempted to dissuade M.V. from testifying.

Speer told M.V. that she "ain't got to go," and that she "ain't got to say that." After telling M.V. that he had always been there for her, Speer said, "Please don't do this to me." Speer told M.V. that he was not going to take a deal to reduce his sentence because he "believed in her." Speer stated during the conversation that although there were things he could tell the police about M.V., he had not done so yet. Finally, he told her twice during the conversation to "do what's right." Viewed in the light most favorable to the prosecution, a rational factfinder could reasonably infer that these statements were made in an attempt to dissuade M.V. from testifying against Speer. This conclusion is only bolstered by the fact that M.V. believed Speer contacted her for exactly that purpose.

Second, Speer argues that the State failed to establish that Speer acted with the intent to thwart or interfere with the orderly administration of justice. Speer contends the State failed to show that its prosecution of Speer in 13-CR-136 would have been harmed if M.V. failed to testify. Speer also suggests that justice could not have been thwarted by the absence of M.V.'s testimony in that case because the State could have used the audio recording or transcript of the October 5, 2013, phone call in place of M.V.'s personal testimony.

Speer's assertions that M.V.'s testimony was not essential to the State's prosecution in 13-CR-136 and that viable alternatives existed to her testimony in 13-CR-136 are misplaced. In order to satisfy this element, the State merely had to show that Speer acted with the "intent to thwart or interfere *in any manner* with the orderly administration of justice." (Emphasis added.) K.S.A. 2015 Supp. 21-5909(a). As discussed above, Speer made several statements that could have been reasonably interpreted as attempts to

7

dissuade M.V. from testifying. While the jury did not hear evidence regarding the specific crimes charged in 13-CR-136, King testified that he worked on that case and that he considered M.V. to be the victim in that case. When this evidence is viewed in the light most favorable to the prosecution, it supports a reasonable inference that Speer was attempting to thwart the State's prosecutorial efforts by dissuading his victim, an important witness, not to cooperate with the State.

Finally, Speer argues that the State failed to establish that M.V. was a victim. A victim is any individual "[a]gainst whom any crime under the laws of this state, any other state or the United States is being, has been or is attempted to be committed" or "who suffers a civil injury or loss." K.S.A. 2015 Supp. 21-5908(b)(1)-(2). Speer argues that because a trial had not yet been held in 13-CR-136, M.V. was only an *alleged* victim and not yet an *actual* victim as defined by the statute. This argument is unpersuasive.

To the extent that Speer is arguing a person can never be defined as the victim of a crime until there is a conviction for that crime, such an assertion is easily refuted. If an individual is robbed at gunpoint by a masked criminal, a rational factfinder could find that the person has been the victim of a crime even if the perpetrator is never caught or convicted. Further, K.S.A. 2015 Supp. 21-5909(a)(2) clearly contemplates circumstances in which a person could be a victim prior to the time a verdict is announced. Although not used in this case, that subsection defines intimidation of a witness or victim in part as preventing or dissuading or attempting to prevent or dissuade any witness, victim, or person acting on behalf of a victim from "[m]aking any report of the victimization of a victim to any law enforcement officer" or several other named persons. K.S.A. 2015 Supp. 21-5909(a)(2)(A). Under Speer's rationale, neither a victim or a person associated with a victim could exist at the time an initial report is made to law enforcement.

Additionally, the Supreme Court has found that "the crime of aggravated intimidation is complete when the defendant, with the requisite intent, commits an act to

8

intimidate the victim." *State v. Aguirre*, 296 Kan. 99, 106, 290 P.3d 612 (2012). If we were to adopt Speer's argument, the crime could not be completed under some circumstances until a trial had occurred and resulted in a conviction, regardless of when the act of intimidation occurred.

The evidence was sufficient for a rational factfinder to find that M.V. was a victim. First, King testified that he had worked on 13-CR-136, which involved Speer and M.V. Speer was arrested in connection with that case. King testified that he considered M.V. to be the victim in 13-CR-136. Speer objected to this testimony, but the objection was overruled and Speer does not challenge the admission of King's testimony on appeal. Taken together, and viewed in the light most favorable to the prosecution, this evidence is sufficient for a rational factfinder to conclude beyond a reasonable doubt that *some* crime had been, was being, or had attempted to be committed against M.V.

*Evidence of a relationship*

Next, Speer challenges the admission of certain evidence at trial. Typically, appellate review of a district court's decision to admit evidence involves a multistep analysis. The first step is to determine if the evidence is relevant. *State v. Hilt*, 299 Kan. 176, 188-89, 322 P.3d 367 (2014). But here, Speer does not argue that the admitted evidence was irrelevant. An issue not briefed on appeal is deemed waived and abandoned. *State v. Jones*, 300 Kan. 630, 639, 333 P.3d 886 (2014). The second step is to review de novo the district court's conclusion as to which legal principles or rules of evidence apply. The final step is to review the district court's decision for either abuse of discretion or de novo, depending on the nature of the applicable rule or principle. *Hilt*, 299 Kan. at 189.

Speer argues that the district court should have excluded any evidence relating to Speer's relationship with M.V. because it was unduly prejudicial. Although not explicitly

9

mentioned by either party, the rule of evidence at issue here appears to be the rule that a district court can exclude evidence if its probative value is outweighed by its potential for producing undue prejudice. See K.S.A. 60-445. This court reviews a determination under this rule for abuse of discretion. *State v. Lowrance*, 298 Kan. 274, 291, 312 P.3d 328 (2013). A judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013). A decision is arbitrary, fanciful, or unreasonable when no reasonable person would have taken the view of the district court. *State v. Wilson*, 301 Kan. 403, 405, 343 P.3d 102 (2015). The party asserting that the court abused its discretion bears the burden of establishing such abuse of discretion. *State v. Holmes*, 278 Kan. 603, 623, 102 P.3d 406 (2004).

Before trial, the State filed a motion seeking permission to present evidence showing that M.V. was a victim in 13-CR-136 and that Speer was charged with aggravated indecent liberties with a child in that case. Speer filed a written objection arguing that the nature of the charges in 13-CR-136 were prejudicial and could cause the jury to convict Speer in this case based on factors other than the evidence presented at trial. The district court ultimately ruled that the State could present evidence that (1) Speer was arrested for a crime by the Pawnee County Sheriff in 13-CR-136, (2) Speer was in custody at the time of the current alleged offense, and (3) "the victim in the current case is a victim and/or witness relevant to the prosecution of [13-CR-136]." The district court also ruled, however, that the State could not introduce any evidence relating to the specific crime charged in 13-CR-136.

On the day of trial and before the first witness was called, Speer raised a slightly different objection. His attorney expressed concern that if the jury heard M.V.'s age and also heard that she was Speer's girlfriend, then the jury would be able to deduce the nature of the charges against him in 13-CR-136. To satisfy this concern, Speer asked that

10

the State be prohibited from introducing any evidence that Speer and M.V. were boyfriend and girlfriend. The district court overruled this objection but allowed the defense to assert a standing objection so Speer would not have to draw attention to the issue in front of the jury. Nevertheless, Speer renewed the objection when the State asked M.V. if she and Speer dated.

On appeal, Speer appears to challenge evidence introduced that established M.V.'s age in conjunction with the introduction into evidence of the fact that M.V. and Speer dated. Specifically, he asserts: "The admission of evidence that M.V. was fourteen years old coupled with the information that she and Mr. Speer were 'dating' violated Mr. Speer's constitutional right to a fair trial." Speer argues that by eliciting testimony revealing M.V.'s age and the fact that she dated Speer, the State effectively revealed the specific nature of the charges in 13-CR-136.

To the extent Speer is challenging the admission of evidence relating to M.V.'s age, his argument is without merit. First, Speer failed to object when the State asked three different witnesses to state M.V.'s age. "In order to preserve an issue for appeal, a defendant must make a specific and timely objection to the district court." *State v. Levy*, 292 Kan. 379, Syl. ¶ 3, 253 P.3d 341 (2011). But perhaps more importantly, M.V.'s age was also an element of the crime charged in this case. Even assuming the issue was properly preserved, we cannot find the district court abused its discretion by admitting M.V.'s age when it was an essential element of the crime.

Speer did object to testimony establishing that Speer and M.V. had dated. But his argument on appeal is that, because the State also introduced M.V.'s age into evidence, the jury could infer that Speer was charged with a sexual offense in 13-CR-136. The mere fact that Speer and M.V. were dating does not support such an inference. Nothing in the trial transcript establishes any sexual relationship between M.V. and Speer. The jury could just as reasonably have surmised that Speer burglarized M.V.'s home. Thus, the

district court's decision to admit evidence relating to the past relationship between M.V. and Speer did not reveal any specific information about the crime Speer was charged with in 13-CR-136.

Speer also contends that evidence of M.V.'s age and her relationship to Speer was unduly prejudicial because M.V.'s status as a victim could have been established in less prejudicial ways. First, he suggests the parties could have stipulated to her status as a victim. Speer cites nothing in the record showing that he offered to make such a stipulation. Second, he claims the State simply could have shown that Speer and M.V. were acquainted rather than that they were dating. Speer fails, however, to cite any rule requiring the State to prosecute a defendant using less prejudicial evidence merely because such evidence exists. To that end, Speer readily acknowledges in his brief that the State did not violate the district court's pretrial order.

For the reasons stated above, we conclude the district court's decision to permit the State to introduce evidence of Speer's dating relationship with M.V. was not arbitrary, fanciful, unreasonable, or erroneous.

Affirmed.