NOT DESIGNATED FOR PUBLICATION

No. 119,174

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

SHAWN PERRY DOYLE,
*Appellant.*

MEMORANDUM OPINION

Appeal from Shawnee District Court; MARK S. BRAUN, judge. Opinion filed July 12, 2019. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Jodi Litfin*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before BUSER, P.J., PIERRON and BRUNS, JJ.

PER CURIAM:  A jury convicted Shawn Perry Doyle of aggravated intimidation of a victim and criminal damage to property. The district court sentenced Doyle to 40 months' incarceration. Doyle appeals.

FACTS

In 2016, Doyle was living with Michelle Stevens, with whom he has a son, who was approximately 9 years old. In the middle of August 2016, Doyle and Stevens decided their relationship would not go any further and he left the residence. At the end of

1

August, Stevens changed her phone number and did not provide Doyle with her new number. Stevens and Doyle have different versions of what transpired on the night of September 2, 2016, when Doyle went to Stevens' house to get her new number.

Stevens testified that when Doyle moved out, he took all his things and returned her house and car keys. On September 2, 2016, she and her sister, Heather Slater, and their four children were at Stevens' house. Stevens was in her bedroom with her daughter and Slater was in the living room with her two children and Stevens' son. Stevens heard a "big boom," jumped out of her bed, and met Doyle in the hallway. Doyle had an ax hammer in his hand. Stevens testified that Doyle was angry; yelling and "like a hulk or something, like he was just crazy." She could not remember what all was said, but she remembered the children in the living room were screaming and crying. She told him, "Please don't do this in front of the children." Doyle told her that they had to have contact with each other because they have a child together and if Stevens refused, he was going to "wreck shit," which she understood to mean "wrecking [her] life, wrecking [her] things, hurting [her]." She testified she was afraid for her life. Doyle put the ax hammer in his pocket and she convinced him to go outside. She followed him out and gave him her phone number and he left.

The loud boom Stevens had heard was Doyle kicking down the door. He dented the front door, leaving an imprint of a large footprint and the frame was split down the middle.

After Doyle left, Stevens, Slater, and the children went to Slater's house in Troy. During the drive, Stevens called Doyle and told him to fix the door, so nobody could get into the house while she was gone. Doyle agreed to fix the door. He told her multiple times he did not want her to call the police on him but, even if she did, "then it didn't matter, because he would be back." She understood that statement to mean if she called

police on him and he would be back to ruin her life. Stevens asked Doyle to leave her alone and told him she would not call the police if he had no more contact with her.

Stevens did not call the police that night as she was afraid doing so would anger Doyle and he would do "something worse." She was afraid of Doyle because he had been abusive, and she understood his statement that he would be back as threatening. The next morning, she called police because she was afraid to return home. Topeka Police Officer Dominic Yancy met Stevens at a park and went to her house as a civil standby to make sure Doyle was not at the house.

Doyle testified that when he and Stevens ended their relationship, they agreed he would not stay with her regularly and he only packed a few things when he left. After that, he had freely gone in Stevens' house because he still had his key. On the night of September 2, 2016, he stated he used his house key to enter Stevens' house. He went to her bedroom to ask why he could not get a hold of her. He told her they had to communicate with each other because of their child. He then left because she became so upset. He thought it best to remove himself from the situation. Stevens followed Doyle outside and provided him with her new phone number.

When Doyle left Stevens' house, he returned to Caylee Longstaff's house, where he had been that day. Shortly thereafter, Stevens called Doyle and told him she was moving out of state the next day and he needed to get his belongings from her house or she would throw them away. He left Longstaff's house to retrieve his property, but he did not have his house key and assumed he had lost or misplaced it. He called Stevens to tell her he did not have his key and asked her to return to let him in. When she refused, Doyle told her that he would break the door if he had to. She responded that she did not care how he got his things, but she would not return. He then kicked the door in, packed his things, and returned to Longstaff's house. Stevens called him later that night and told him

3

to fix the door. He assumed she would report it to the police. Doyle still attempted to fix the door, adding screws to keep the frame together, which allowed the door to close.

The State charged Doyle with aggravated assault, criminal damage to property, aggravated burglary, and aggravated intimidation of a victim. At trial, Doyle stipulated to a prior conviction of intimidation of a witness or victim, as required for the State to provide the aggravated charges of intimidation of a victim under K.S.A. 2016 Supp. 21-5909(b)(3). The jury convicted him of criminal damage to property and aggravated intimidation of a victim and acquitted him of aggravated assault and aggravated burglary. The district court sentenced Doyle to 40 months' incarceration with 24 months' postrelease supervision.

Doyle appeals.

*Aggravated Intimidation of a Victim*

Doyle contends the State failed to present sufficient evidence for a finding beyond a reasonable doubt that he intentionally attempted to dissuade Stevens from making a report of her victimization to any law enforcement officer with intent to interfere with the orderly administration of justice. He claims the State did not show his actions or intent were criminal.

> "'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted." *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

4

It is only in rare cases where the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed. *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983).

The State charged Doyle with aggravated intimidation of a victim under K.S.A. 2016 Supp. 21-5909(a)(2)(A) and (b)(3), under which:

> "(a) Intimidation of a witness or victim is preventing or dissuading, or attempting to prevent or dissuade, with an intent to . . . interfere in any manner with the orderly administration of justice:
>
> . . . .
>
> "(2) any witness, victim or person acting on behalf of the victim from:
>
> "(A) Making any report of the victimization of a victim to any law enforcement officer, prosecutor, probation officer, parole officer, correctional officer, community correctional services officer or judicial officer, the secretary of the department of social and rehabilitation services or any agent or representative of the secretary, or any person required to make a report pursuant to K.S.A. 2016 Supp. 38-2223, and amendments thereto;
>
> . . . .
>
> "(b) Aggravated intimidation of a witness or victim is intimidation of a witness or victim, as defined in subsection (a), when the:
>
> . . . .
>
> "(3) act is committed by a person who has been previously convicted of corruptly influencing a witness or has been convicted of a violation of this section or any federal or other state's statute which, if the act prosecuted was committed in this state, would be a violation of this section[.]"

Doyle first asserts the State failed to show he did anything more than merely convey to Stevens his wish that she not contact law enforcement and because he did not threaten her with any negative consequence, his actions were not criminal. He contends that any fear Stevens had stemmed from his previous alleged conduct, not from his

5

expressing, on the night in question, that he preferred she did not contact law enforcement.

When reviewing sufficiency of the evidence in an aggravated intimidation case, we consider the effect of the defendant's words or actions on a victim under an objective, not subjective, standard. *State v. Phelps*, 266 Kan. 185, 195, 967 P.2d 304 (1998). To establish aggravated intimidation of a victim, the State must have shown that a reasonable person in the same situation as the victim would have been dissuaded by the defendant's actions. 266 Kan. at 195. The effect the defendant's actions had on the victim are of no consequence to a conviction as the crime is completed when the defendant, with the required intent, commits an act to intimidate or dissuade the victim. *State v. Aguirre*, 296 Kan. 99, 106, 290 P.3d 612 (2012).

The evidence showed Doyle was angry with Stevens for having changed her phone number and he could no longer contact her regarding their son. He kicked in the door and "went straight to" her bedroom with a "look of hate" on his face. Although Doyle maintained his concern was having contact with and about his son, when he saw his son, he only said "Hi" and walked past as his focus was on obtaining Stevens' phone number. Stevens and Doyle met in the hallway and during the confrontation, Doyle yelled at Stevens and he was "like a hulk or something, like he was just crazy." He threatened to "wreck shit" if Stevens refused to maintain contact with him. Doyle later agreed to fix the door, expressing repeatedly that he did not want Stevens to call law enforcement. Doyle told Stevens that even if she did call the police, he would be back. She testified that Doyle was abusive.

When considering the evidence in a light most favorable to the State, a reasonable person in the same situation as Stevens would have been dissuaded from reporting Doyle's crimes to the police. K.S.A. 2016 Supp. 21-5909(a)(2)(A) and (b)(3) do not require a threat of physical harm or negative consequences as Doyle asserts. The statute

6

merely requires an attempt to prevent or dissuade Stevens from reporting victimization after Doyle had previously been convicted of similar conduct.

Doyle also challenges the sufficiency of the State's evidence in support of an "intent to interfere in any manner with the orderly administration of justice." He asserts there is a difference between dissuasion by a defendant and a victim's discretion in not reporting or, as occurred here, waiting to report until a later time. Doyle contends he only indicated to Stevens that he did not want her to call the police and the State failed to present any evidence that he intended on interfering with the orderly administration of justice in doing so.

To find a defendant guilty of aggravated intimidation of a victim, the State must show the defendant had the specific intent to prevent or dissuade the victim from reporting a crime. Intent is a state of mind existing at the time of the offense, which can rarely be directly proven, but may be inferred from conduct and circumstances. *State v. Dixon*, 289 Kan. 46, 65, 209 P.3d 675 (2009).

Doyle accurately states that if Stevens decided not to report his criminal conduct, she would not have been interfering with the orderly administration of justice. His logic follows that merely expressing an opinion to a victim about his or her decision to call police would not constitute intimidation of a victim. However, we review the evidence in a light most favorable to the State. The evidence shows he kicked the door in, scared everyone in the house, yelled at Stevens about her new phone number, threatened to "wreck shit," then stated repeatedly that he did not want her to call police about his conduct. During their conversations, he told her that even if she called police, he would be back. Stevens testified she offered not to call police if Doyle agreed to never have contact their son again. However, Doyle continued to call.

7

Considering the evidence in a light most favorable to the State, even though Stevens offered not to call police if Doyle left her and their son alone, the other conversations between them show his intent to dissuade her. As stated above, the victim's decision of whether to report to the police has no effect on whether the defendant committed the crime as the crime is complete once the he or she attempts to dissuade the victim with the required intent. Looking at the circumstances, beginning with the kicked in door, a reasonable person would have perceived Doyle repeatedly asking Stevens not to call police as an attempt to dissuade her so as to interfere with the orderly administration of justice. Given the circumstances, a reasonable person would have interpreted Doyle's assertion that if Stevens called the police he would be back, as sufficiently threatening to show an intent to prevent her from reporting his criminal behavior, interfering with the orderly administration of justice.

*Is K.S.A. 2016 Supp. 21-5909 Unconstitutionally Vague?*

Doyle contends that the statutory language "interfere in any manner with the orderly administration of justice" is unconstitutionally vague. He claims the vague language permits arbitrary and discriminatory enforcement. Doyle argues a person of ordinary intelligence is left to guess whether his or her conduct was criminal because the statute seemingly criminalizes any type of communication directed at attempting to dissuade somebody with discretion to report a crime from doing so, and so would be void for vagueness. If we determine the statutory language is constitutional, he claims the jury was not properly instructed as to the meaning of the phrase.

"Whether a statute is constitutional is a question of law subject to unlimited review. This court presumes that statutes are constitutional and resolves all doubts in favor of passing constitutional muster. [Citation omitted.]" *State v. Bollinger*, 302 Kan. 309, 318, 352 P.3d 1003 (2015). We must find the statute constitutionally valid if there is any reasonable way to construe it as such. 302 Kan. at 318. The test for constitutional

8

vagueness consists of two inquiries: (1) whether the statute provides "a person of ordinary intelligence" fair warning as to the proscribed conduct and (2) whether it protects against arbitrary and unreasonable enforcement. 302 Kan. at 318.

Doyle failed to raise this issue before the district court. Although we generally cannot review constitutional issues raised for the first time on appeal, Doyle contends the vagueness argument fits into two exceptions to the general rule. He asserts this is an issue of law arising from proved or admitted facts and consideration is necessary to serve the ends of justice or prevent denial of a fundamental right. This court has permitted review of constitutional vagueness under those exceptions. *State v. White*, 53 Kan. App. 2d 44, 55, 384 P.3d 13 (2016).

Doyle contends K.S.A. 2016 Supp. 21-5909 is constitutionally invalid under both inquiries of the test. He asserts the statute fails to clarify what contact between an offender and a victim or witness constitutes interference with the orderly administration of justice and such failure criminalizes all communication by the offender with somebody who has discretion in reporting the offender's criminal conduct. Therefore, the offender has no fair notice of the type of conduct that constitutes intimidation of a victim and the broad language permits arbitrary and discriminatory enforcement.

Doyle relies on the concurring opinion by Michigan Supreme Court Justice Levin in *People v. Davis*, 408 Mich. 255, 290 N.W.2d 366 (Mich. 1980). "To state that the offense can be defined solely in terms of the object sought to be accomplished obstruction of justice may mean that the 'Michigan common-law offense of obstruction of justice' is void for vagueness." 408 Mich. at 292 (Levin, J., concurring). However, this concurring opinion from a Michigan case is neither binding nor persuasive. Justice Levin made the above comment after discussing the history of obstruction of justice as a crime that he believed should have been a category of offenses rather than a single offense. "Obstruction of justice" was a broad term that was the object sought to be accomplished

9

by the conduct. The common law offense provided no guidance as to what elements the prosecution had to satisfy for a conviction. Justice Levin noted that by the year 1800 an indictment under obstruction of justice included conspiring to dissuade a witness from attending judicial proceedings, done with the intent to obstruct the due course of justice. 408 Mich. at 286-87 (Levin, J., concurring).

If we considered the *Davis* concurrence, we should conclude aggravated intimidation of a victim is not vague as intimidation of the victim is not the object sought to be accomplished, the intent was to interfere with the orderly administration of justice. As such, according to Justice Levin, intimidation of a victim would fit under the umbrella of the overly broad Michigan common-law offense of obstruction of justice.

Doyle does not challenge whether the reporting of a crime is considered part of the "orderly administration of justice." The United States Supreme Court has recognized "society's interest in giving the prosecution one complete opportunity to convict those who have violated its laws." *Arizona v. Washington*, 434 U.S. 497, 509, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978). The orderly administration of justice encompasses the State's opportunity to prosecute offenders, beginning with the initial report to law enforcement.

Doyle challenges the constitutionality of the phrase "interfere in any manner with the orderly administration of justice." When taken out of context and reviewed alone, that phrase may appear vague, but not when considering it only provides the intent element of the offense. To be convicted of intimidation of a victim under K.S.A. 2016 Supp. 21-5909(a), the State must show the defendant prevented or dissuaded the victim or witness, or attempted to do so, with the "intent to thwart or interfere in any manner with the orderly administration of justice." Thwarting or interfering with the State's opportunity to prosecute offenders is the objective of the conduct.

When considering this phrase, the appellate court first considers the plain meaning of the words together. Black's Law Dictionary 930 (10th ed. 2014) defines "intent" as: "The state of mind accompanying an act, esp. a forbidden act. . . . intent is the mental resolution or determination to do [some act]." The definition of "thwart" is "to run counter to so as to effectively oppose or baffle; contravene; to oppose successfully; defeat the hopes or aspirations of." Webster's Ninth New Collegiate Dictionary 1232 (1991). "Interfere" is defined as "to interpose in a way that hinders or impedes." Webster's Ninth New Collegiate Dictionary 631 (1991). The challenged statute falls under Chapter 59 of the Kansas Criminal Code which encompasses "Crimes Affecting Government Functions." The object of the offender is to disable a government function. Therefore, for a conviction under K.S.A. 2016 Supp. 21-5909(a)(2)(A), a third party must act or communicate with a victim or witness in a manner that would discourage him or her from reporting victimization and the defendant's conduct or communication must be done with the purpose of hindering the State's ability to prosecute.

Prior to its repeal, K.S.A. 21-3832(a) required intimidation of a witness or victim to be done "knowingly and maliciously." K.S.A. 21-3831(b) defined "[m]alice" as "an intent to vex, annoy, harm or injure in any way another person or an *intent to thwart or interfere in any manner with the orderly administration of justice.*" (Emphasis added.) Rhode Island, Wisconsin, Delaware, and California statutes each define "malice" in the same way with respect to the intent required for intimidation of a witness or victim. R.I. Gen. Laws § 11-32-4; Wis. Stat. § 940.41; Del. Code Ann, tit. 11, § 3531; Ca. Penal Code § 136. When the Kansas Legislature repealed the statutory scheme in 2011, it inserted the definition of malice into the statute defining the crime rather than maintaining a separate definitions statute.

There is no precedence regarding the constitutionality of the challenged phrase. However, in *People v. Broadbent*, No. A141538, 2016 WL, 69916 (Cal. Ct. App. 2016) (unpublished opinion), the First District, Division 2, Court of Appeals of California

11

rejected the claim that the challenged phrase was unconstitutional. The California court reviewed the legislative history, discussing that the California Legislature added the challenged phrase to the definition of malice specifically for the offense of intimidation of a witness or victim based on the Model Statute drafted by the American Bar Association (ABA) Section on Criminal Justice. 2016 WL 69916. The ABA commentary on malice stated:

> "'The Committee felt a need to draw a distinction between persuasion, often rather vigorous, which may be exercised by, for example, a victim or a witness' family members whose motivation for attempting to persuade the person not to testify is legally blameless. Consequently, the malice intended in and defined by the statute should be intentionally and knowingly exercised. The committee grappled considerably with this issue. Some members wished to punish all dissuading but for certain narrowly drawn exemptions, but the majority felt that the statute would potentially punish, for instance, a person casually remarking to a potential witness that he or she should not bother getting involved in the process.' [ABA Section on Crim. Justice, Victims Com., Reducing Victim/Witness Intimidation: A Package (1979)] at 7." *People v. Wahidi*, 222 Cal. App. 4th 802, 809, 166 Cal. Reptr. 3d 416 (2013).

The California Court of Appeals found the "definition was intended to exclude innocent conduct that is performed without the requisite specific intent" and, thought the Legislature intended the definition to have a "broad sweep, this definition of malice make plain to whom it applies *Broadbent*, 2016 WL 69916, at *9. Seeing as the analysis to the challenged language stems from the source of the model statute adopted by the Kansas Legislature, *Broadbent* is persuasive.

Therefore, contrary to Doyle's assertion, not all communication with a victim, even by the offender, would constitute intimidation of a victim. The communication must be done in a way that would persuade against reporting. A third party may in good faith

12

discuss the victim's or witness' options with the possible reporting party's interests in mind.

Doyle next claims that if we find K.S.A. 2016 Supp. 21-5909 constitutional, the jury was not instructed of the "reasonable construction of the statute that would provide notice of when exercise of a discretionary legal option can constitute interference." In Doyle's attempt to redirect focus away from his criminal conduct and onto the discretion a victim has in reporting a crime, he fails to adequately brief the issue. Though he cites *State v. Cummings*, 297 Kan. 716, 306 P.3d 556 (2013), he mistakenly claims the issue was the district court's failure to instruct the jury on the definition of "endangerment" rather than "reasonable probability." He also fails to analyze how *Cummings* relates here. Issues not adequately briefed are deemed waived or abandoned. *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018).

If we consider Doyle's argument that the jury was not properly instructed, we will analyze the jury instructions in a three-step process. *State v. McLinn*, 307 Kan. 307, 317, 409 P.3d 1 (2018). First, we must determine whether we can or should review the issue. Second, we will consider the merits of the claim to determine whether the district court erroneously instructed the jury. If we determine an instruction error occurred, we will then review the error for reversibility. 307 Kan. at 317; K.S.A. 2018 Supp. 22-3414(3). Under the first step, we may review the issue, but Doyle's failure to object at trial will affect the third step of the process—reversibility under the clear error standard. 307 Kan. at 317.

Doyle contends the instruction error stemmed from the jury not being instructed on a reasonable construction of K.S.A. 2016 Supp. 21-5909(a) that permits interference when a victim has discretion in whether to report his or her victimization. However, his argument that the victim's discretion somehow impacts the lawfulness of his actions fails here as it has above. His reliance on *Davis*, 408 Mich. 255, is misplaced as intimidation

13

of a victim is not defined solely in terms of the object sought to be accomplished. The constitutionality of K.S.A. 2016 Supp. 21-5909(a) is based on the plain meaning of the words read together. Doyle's challenge is contingent on the need for statutory interpretation to produce a reasonable construction of the statute to reach constitutionality. In the absence of such construction, his challenge fails. Because the plain language suffices to pass the muster of constitutionality, no error occurred. We need not analyze this issue under the clear error standard for reversibility.

*Did the State Commit Reversible Error by Misstating Evidence and Law in Its Closing Arguments?*

Doyle claims prosecutorial error as the State misstated the evidence and law in closing arguments. He asserts the error contributed to the verdict and we must reverse his conviction for aggravated intimidation of a victim.

Under the modified standard in *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016), the appellate court uses a two-step process to evaluate claims of prosecutorial error:

> "These two steps can and should be simply described as error and prejudice. To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' *State v. Ward*, 292

14

Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), *cert. denied*, 565 U.S. 1221 (2012). We continue to acknowledge that the statutory harmlessness test also applies to prosecutorial error, but when 'analyzing both constitutional and nonconstitutional error, an appellate court need only address the higher standard of constitutional error.' [Citation omitted.]" *Sherman*, 305 Kan. at 109.

"Every instance of prosecutorial error will be fact specific, and any appellate test for prejudice must likewise allow the parties the greatest possible leeway to argue the particulars of each individual case." 305 Kan. at 110. Even if the prosecutor's actions were egregious, reversal of a criminal conviction is not an appropriate sanction if the actions did not prejudice the defendant. 305 Kan. at 114.

Any argument "must accurately reflect the evidence, accurately state the law, and cannot be 'intended to inflame the passions or prejudices of the jury or to divert the jury from its duty to decide the case based on the evidence and the controlling law.'" *State v. Raskie*, 293 Kan. 906, 917, 269 P.3d 1268 (2012) (citing *State v. Tosh*, 278 Kan. 83, 90, 91 P.3d 1204 [2004]). A prosecutor commits error even when the misstatement of evidence or law is accidental or inadvertent. See *State v. Sturgis*, 307 Kan. 565, 570, 412 P.3d 997 (2018).

*Misstatement of evidence*

Doyle claims the State erred by saying, "Why didn't she call the police? Because he told her not to, and promised her that he would leave her alone and that he would fix the door if she didn't call police." He contends these comments by the State were contrary to the evidence, in which Stevens testified:

"Q.     Well, you asked him to leave you alone and have no contact with you and you wouldn't call the police, right?
"A.     Yes.

15

"Q.    Okay. And he wanted to have contact with you because of you have a child together, correct?

"A.    Yes, yes.

"Q.    So –

"A.    At this point, I just wanted him to go away, just to leave us alone.

"Q.    Well, do you think that's realistic when you both have a child?

"A.    No. No. But also don't want my child around somebody like that.

. . . .

"Q.    The – so what he told you was that he would have contact with you if you called the police, right? And you didn't want him to have contact, right?

"A.    I told him not to have contact and then I wouldn't call the police. And he said that—and then that was it. And then he still continued to call me and so then I called the police."

Doyle asserts the State mischaracterized the evidence by inferring Doyle had not offered to contact Stevens in return for her not calling the police, but Stevens testified she asked Doyle not to contact her and then offered not to call police if he agreed.

The State contends the argument was consistent with the evidence, though the language was changed, the meaning remained the same. Right before the first complained of statement, the State said, "During the phone calls, there's conversation about calling the police and fixing the door. [Stevens] told you that [Doyle] relayed to her not to call the police." The State counters by pointing out that Stevens testified Doyle told her multiple times during the phone calls that he did not want her to call police and if she did, he would be back.

The State correctly argues that no matter which of them brought up Doyle no longer having contact with Stevens, the substance remained the same. Doyle agreed not to have any more contact with Stevens in return for her not calling the police, which, though worded differently, has the same meaning as him promising not to contact her if she did not call police. Significantly, she testified that he continued to call her after

16

agreeing not to, which weighed into her decision to call the police. By continuing to call after agreeing to leave Stevens alone, the issue of who proposed no contact in return for not calling police becomes inconsequential because Doyle did not keep his promise. The State did not err in its representation of the evidence. We need not analyze whether the statements prejudiced Doyle.

*Misstatement of Law*

Doyle also claims the State misstated the law in its closing argument by diluting its burden of proof when reviewing the jury instruction for aggravated intimidation of a victim. The State argued:

> "On paragraph number 1 it says, 'The defendant attempted to dissuade a victim from making a report of victimization of the victim to a law enforcement officer.' Nowhere on there does it say he had to threaten her. *All I have to prove beyond a reasonable doubt is that he attempted to dissuade her from making the report of the victimization of the victim* and he succeeded in doing that." (Emphasis added.)

Doyle contends the State diluted its burden of proof by saying it only had to prove he attempted to dissuade Stevens from reporting the victimization, when it also had to prove intent.

The State claims it did not misstate the law, but only focused on one element before moving on to the evidence that supported conviction for the offense. It notes that the element read aloud was one of four elements on the instruction sheet read aloud and provided to the jury by the district court, and the jury had been instructed that each element had to be proven beyond reasonable doubt for conviction. The State supports the assertion by pointing to Doyle's closing arguments in which he focused on the second element of the offense.

17

Contrary to the State's assertion, the above statement was a misstatement of the law. Had the State wished to only focus on one element, it could have done so by pointing out what had to be shown to prove the one element. However, at no point in its closing arguments did the State reference the remaining three elements of the crime or note that it had to prove more than just Doyle's attempt to dissuade Stevens. The comparison to Doyle's closing arguments in which he focused on only one element is unconvincing as Doyle only needed to show reasonable doubt existed as to one element for acquittal but the State's burden was to prove each element beyond a reasonable doubt.

*Reversibility*

Because the State committed error, we must determine whether the error prejudiced Doyle's due process rights to a fair trial. If the State has shown beyond a reasonable doubt that the error did not affect the outcome of the trial, it is deemed harmless and not reversible. *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011).

The State asks us to consider the jury instructions as a whole. The jury was instructed:

> "Statements, arguments, and remarks of counsel are intended to help you in understanding the evidence and in applying the law, but they are not evidence. If any statements are made that are not supported by evidence, they should be disregarded."

The district court instructed the jury on the burden of proof in the second jury instruction,

> "The State has the burden to prove the defendant is guilty. The defendant is not required to prove he is not guilty. You must presume that he is not guilty unless you are convinced from the evidence that he is guilty.
> "The test you must use in determining whether the defendant is guilty or not guilty is this: If you have a reasonable doubt as to the truth of any of the claims required

18

to be proved by the State, you must find the defendant not guilty. If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you should find the defendant guilty.

"It is for you to determine the weight and credit to be given the testimony of each witness. You have a right to use common knowledge and experience in regard to the matter about which a witness has testified."

The State contends that generally, juries are presumed to have followed the instructions provided by the district court and a prosecutor's comments may be mitigated by burden of proof instructions. *State v. Rogers*, 276 Kan. 497, 503, 78 P.3d 793 (2003); see *State v. Cosby*, 293 Kan. 121, 137, 262 P.3d 285 (2011).

The burden of proof instruction as argued by the State refers the jury to all claims required to be proved by the State. In the jury instruction which provides the elements of aggravated intimidation of a victim, before listing the elements, the instruction provides: "To establish this charge, each of the following claims must be proved[.]"The State focused on the element to counter Doyle's assertion that because he did not threaten Stevens with bodily harm or other negative consequences, he could not be guilty of aggravated intimidation of a victim. In determining whether a defendant was prejudiced, the appellate court must allow parties the greatest possible leeway to argue the particulars of the individual case. Because the jury was properly instructed as to the State's burden of proof and the State only elaborated on the one element it read aloud to counter the defendant's assertion that threat was required, the error was harmless.

Affirmed.

19